(No. 5890.  October 17, 1932.)

HERMAN SCHLIEFF, PAUL M. BRYAN and ROSE G. SCHLIEFF, as Trustees of the CONSUMERS OIL COMPANY, a Defunct Corporation, Appellants, v. PAUL BISTLINE, J. E. TARR, Jr., UTAH OIL REFINING COMPANY, a Corporation, and the BLUE LIGHT GAS AND OIL COMPANY, a Corporation, Respondents.

[15 Pac. (2d) 726.]

Walter H. Anderson, for Appellants.

Finis Bentley and F. M. Bistline, for Respondents.

LEEPER, J.—On June 29, 1929, Herman Schlieff and Paul Bistline, who were stockholders, directors and officers of the Consumers Oil Company, an Idaho corporation, entered into a written contract with the Utah Oil Refining Company, a Utah corporation, for the sale of all of the assets of the Consumers Company to a new corporation to be formed by the latter for the express purpose of taking over the business. The contract was ratified by the stockholders of the Consumers Company and thereafter carried out, its details

being of no concern in this litigation except as hereafter stated. Among the provisions of the contract was one authorizing the Utah Oil Refining Company to retain $25,000 of the purchase price for a period of ninety days to insure the payment of all debts of the Consumers Oil Company. Later, on August 6th, 1929, this clause was modified by letter, to the effect that certain accounts due the Consumers Oil Company totaling $15,731.01 should be assigned to the Utah Oil Refining Company, to be by it held for ninety days in lieu of the $25,000 cash retained, and collected in the due course of business. The pertinent part of the letter is as follows:

"Also we have this day assigned to you the accounts receivable of the Consumers Oil Company as per schedule furnished, amounting approximately to $15,731.01. You may collect these accounts and hold the proceeds thereof for ninety (90) days from the first day of July, 1929, as a guaranty that the accounts receivable of the Consumers Oil Company will by that time be paid. At the end of said ninety-day period you are to deliver to us all cash collected on account of said bills receivable and re-assign to us the uncollected accounts, or retain the uncollected accounts and pay to us the face value of the accounts receivable."

Pursuant to this letter the $25,000 was paid to the vendors, and the accounts were assigned to the Utah Company. Thereafter the Consumers Gasoline and Oil Corporation was organized by the Utah Company in accord with the terms of the contract, all of its stock being owned by the Utah Company except qualifying shares, and the business and assets of the original Consumers Company were transferred to it. The Utah Company also organized two other corporations, the Idaho Oil Company in Utah and the Blue Light Gas & Oil Company in Idaho, each of which took over a portion of the business from the Consumers Gasoline and Oil Company, which was ultimately permitted to lapse. The Utah Company assigned the accounts aforesaid, first to the Consumers Gas and Oil Company and then to the Idaho Oil Company and the Blue Light Gas & Oil Company for

collection. There is no evidence in the record that these various transfers were made and accepted except in furtherance of the purpose for which the accounts were first assigned, i. e., collection. After they came into the control of the three last-named corporations, the corporations proceeded to collect them and, so far as the record shows, each corporation proceeded diligently and faithfully to collect the quota assigned to it during the ninety-day period. At the expiration of the ninety-day trust period, to wit, October 1, 1929, the Blue Light Company and the Idaho Company transmitted back to the Utah Oil Refining Company all moneys collected and all accounts remaining uncollected, and the latter thereupon made a full and complete accounting to Schlieff and Bistline, reassigned the uncollected accounts and tendered a check for the moneys collected, less certain offsets which they claimed to be entitled to under the original contract. As shown by this accounting, the total amount collected was $7,694.57, after reconciling a certain Fife account, and the total deductions amounted to $2,334.90, leaving a cash balance due Schlieff and Bistline of $5,359.67. Schlieff refused to accept the tender or the reassignment in which refusal Bistline refused to join.

Upon these facts Schlieff predicates a charge of conversion, claiming, as we understand his position, that the assignment of the accounts by the Utah Company to the Idaho Company and the Blue Light Company for collection, was unlawful and in and of itself constituted a conversion on the part of each of them, and for which each of them is jointly and severally responsible to the face value of the accounts which ever came into the hands of each. Plaintiffs sued as the statutory trustees of the Consumers Oil Company, joining Bistline and Tarr as parties defendant because they refused to join in the suit. The court found that there was no conversion by the defendants or any of them and entered judgment of dismissal. According to our view this is the only essential point in the case.

Conceding the contention of appellants that an account is property which is subject to conversion, the present

record is inadequate upon which to base an action of trover. Not every asportation of the property of another will authorize recovery as for an unlawful conversion. Conversion is defined thus:

"Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial or inconsistent with his rights therein, such as a tortious taking of another's chattels, or any wrongful exercise or assumption of authority, personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time. The act must be essentially tortious, but it is not essential to conversion sufficient to support the action of trover that the defendant should have complete manucaption of the property, or that he apply the property to his own use, if he has exercised dominion over it, in exclusion of, in defiance of, or inconsistent with the owner's right." (26 R. C. L. 1098, sec. 3.)

In other words, conversion is a dealing by a person with chattels not belonging to him, in a manner inconsistent with the rights of the owner. The supreme court of Oregon has carefully defined the rule in *Lee Tung v. Burkhart,* 59 Or. 194, 116 Pac. 1066, as follows:

" 'A conversion, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or in defiance of the plaintiff's right, or in withholding the possession from the plaintiff, under a claim of title, inconsistent with his own.' "

This case has been approved and followed in *Hart v. Oregon Laundry Co.,* 91 Or. 324, 178 Pac. 932; *Hess v. Starwich,* 149 Wash. 679, 272 Pac. 75; *Preble v. Hanna,* 117 Or. 306, 244 Pac. 75; *McJunkin v. Hancock,* 71 Okl. 257, 176 Pac. 740.

In this case the accounts in question were delivered to the Utah Oil Refining Company under the terms of the amendatory letter of August 6th, the accounts and the proceeds thereof to be held for a period of ninety days as secu-

rity to insure compliance with the Bulk Sales Law by the vendors. The Utah Company was specifically charged with the collection of them during the ninety-day period. The Idaho Oil Company and the Blue Light Company were subsidiaries of the Utah Company, substantially all of the stock of each being owned by the latter. They were formed to take over the business formerly conducted by the Consumers Oil Company, and the accounts theretofore transferred to the Utah Company as security were assigned by it to the Idaho Company and the Blue Light Company merely to facilitate collection. This was an entirely natural and reasonable procedure, as the two companies had taken over the business out of which the accounts originally arose, were selling in the same territory, and were in a better position to press collections than was the parent company. The record is devoid of any evidence even remotely tending to show that any defendant ever asserted dominion over these accounts ''in defiance or exclusion of plaintiff's rights,'' or ''under a claim of right or title inconsistent with that of the plaintiffs.'' Indeed, the evidence is clear that the officers and agents of all three corporations at all times recognized plaintiffs' ownership of the accounts, and merely proceeded to collect the same during the ninety-day period strictly in accord with the contract. At the expiration of the ninety-day period the Utah Company made a complete accounting to the plaintiffs, tendered a check for the amount collected, less claimed deductions, and reassigned the uncollected accounts. Neither accounts nor money were retained either by the Idaho Company or the Blue Light Company. Certainly the fact that the Utah Company utilized its *alter egos* to enforce collection does not in and of itself operate as a conversion of the accounts under the circumstances.

As heretofore stated, respondents, on October 1, 1929, made a tender of $5,359.67 to Schlieff and Bistline, claiming an offset against the total cash collected of $2,334.90 as itemized in defendants' Exhibit 10. This was accepted by Bistline, who is joined here as a party defendant, but was refused by Schlieff. Later this check was canceled, and a new

one was issued on June 23, 1930, covering this balance, together with the further sum of $450.09, alleged by the Utah Company to be the balance due appellants and Bistline on a $5,000 cash bond retained under the letter of August 6th to insure titles. This was also rejected by Schlieff, who instituted a separate suit to recover the $5,000, and did recover a judgment therefor on June 20, 1931, in the sum of $3,351.70, besides interest, on behalf of the stockholders of the Consumers Company. The judgment-roll of the latter suit— number 9224 of Bannock county—is an exhibit in this case. By this judgment was established the balance due on the $5,000 title bond, and the offsets properly chargeable against the same. The transcript of the evidence taken in case No. 9224 is not before us, and we are unable to state from this record what items of offset were litigated in the other action, although the bond was given to insure certain titles as specified in items A to F of the letter of August 6th and none other.

This letter of August 6th contained in reality two separate agreements, i. e., a bond of $5,000 to guarantee title to the real property and a pledge of accounts to secure compliance with the Bulk Sales Law by the vendors. Applying the criterion of construction as announced in *Krebs Hop Co. v. Livesley*, 59 Or. 574, Ann. Cas. 1913C, 758, 114 Pac. 944, 118 Pac. 165, to wit: "The bare fact that two causes of action spring out of the same contract does not *ipso facto* render a judgment on one a bar to a suit on another. *Perry v. Dickerson*, 85 N. Y. 345, 39 Am. Rep. 663. 'Various tests have been suggested for determining whether the judgment recovered in one action is a bar to a subsequent action. The principal consideration is whether it be precisely the same cause of action in both . . . . and one great criterion of this identity is that the same evidence will maintain both actions.' *Kitchen v. Campbell*, 2 W. Bl. 827. 'It is not a test of the right of a plaintiff to maintain separate actions that all the claims might have been prosecuted in a single action.' *Perry v. Dickerson, supra*. Application of the rule does not depend upon any technical consideration of the

identity of the form of action, but upon the matter of substance. *Brunsden v. Humphrey*, 14 Q. B. Div. 141. 'If different allegations are required in the pleading and different evidence on the hearing, the cause of action is not split,' "—we hold that this contract is severable and that separate actions could properly be maintained upon each undertaking.

The general rule as announced in Corpus Juris is: "The great weight of modern authority is to the effect that a contract to do several things at several times is divisible in its nature because, although the agreement is in one sense entire, the performance is several, and an action will lie for the breach of any one of the stipulations, each of them being considered in respect to the remedy as a several contract." (1 C. J. 1112, sec. 286.)

Therefore, respondents' plea of *res adjudicata* is not well founded.

The court made the ultimate finding that none of the corporate defendants "wrongfully or otherwise converted the or any of said accounts receivable to the use and benefit of said corporations in the sum of $15,791.09 or in any other amount or at all." With this we are in strict accord, and technically a judgment of dismissal is sustained by the record.

As we construe the ultimate finding, the court did not intend thereby to foreclose appellants from further relief justified by the facts. It is apparent from the record that respondent Utah Oil Company has in its possession certain cash and accounts belonging to plaintiffs to the possession of which the latter is entitled, and while the instant action is for conversion of the accounts the facts are fully pleaded in the complaint and under the liberal rules of practice prevailing in this jurisdiction the court should have proceeded to grant plaintiffs such relief as they were entitled to.

C. S., sec. 6829, provides: "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the

case made by the complaint embraced within the issue,'' and in construing this section this court has repeatedly upheld the rule that: "Under the provisions of that section, when an answer was filed as was done in the case at bar, the court may grant any relief consistent with the case made by the complaint, and embraced within the issues made whether such relief be prayed for or not. The law of civil procedure in this state prohibits the splitting up of causes of action and a multiplicity of suits. A court of equity having obtained jurisdiction of a cause for any purpose, may retain it for all purposes, and proceed to a determination of all of the matters in issue. The plain intention of our law is that, when the parties are once in court, all conflicting claims shall be settled between them arising out of the subject matter involved in the issue." (*Dover Lumber Co. v. Case*, 31 Ida. 276, 170 Pac. 108.)

The rule is also thus stated: "It is true appellant prays for damages, for herself alone, in the amount she paid for her stock, which she states has become worthless through respondents' acts. That is only her opinion as to the relief which should be granted, and is not binding upon the court. She should be granted any relief her pleadings and proof show her to be entitled to, either in law or equity." (*Smith v. Rader*, 31 Ida. 423, 173 Pac. 970.)

Other sustaining cases are: *Barker v. McKellar*, 50 Ida. 226, 296 Pac. 196; *Dennis v. Cooperative Publishing Co.*, 46 Ida. 534, 269 Pac. 82; *Casady v. Scott*, 40 Ida. 137, 237 Pac. 415; *Poncia v. Eagle*, 28 Ida. 60, 152 Pac. 208; *Carroll v. Hartford Fire Ins. Co.*, 28 Ida. 466, 154 Pac. 985; *Idaho Irr. Co., Ltd., v. Dill*, 25 Ida. 711, 139 Pac. 714; *Bates v. Capital State Bank*, 21 Ida. 141, 121 Pac. 561; *Rauh v. Oliver*, 10 Ida. 3, 77 Pac. 20; *Burke Land & Livestock Co. v. Wells, Fargo & Co.*, 7 Ida. 43, 60 Pac. 87. See, also, 3 Bancroft's Code Practice and Remedies, sec. 1764, p. 2303.

A jury was waived in this case and the issues were tried to the court. The defendant Utah Oil Company has heretofore rendered an account to the plaintiffs relative to its dealings with these accounts, as to the correctness of

which the lower court made no finding. Neither did the court enter any judgment purporting to settle this issue between the parties. As the transaction arose out of the original contract of purchase and sale, this should be done, regardless of the form of the action.

We shall therefore remand the case to the district court, with instructions to settle and determine the account between the parties, make findings specifying the amounts collected by the Utah Oil Company and the offsets and counter charges to which it is entitled, and enter judgment accordingly. Interest and costs should follow a judgment in favor of the plaintiffs (if any) only if the original tender made by the Utah Oil Company was insufficient. The record appears to be full and complete upon which to base such findings and judgment, but the case may be reopened for further evidence and proceedings at the instance of either party or by the court *sua. sponte.*

The judgment is affirmed as to Paul Bistline, J. E. Tarr, Jr., Idaho Oil Company, a corporation, and the Blue Light Gas and Oil Company, a corporation. The judgment is reversed as to the Utah Oil Refining Company and remanded, with instructions to proceed as herein indicated. No costs awarded on this appeal.

Lee, C. J., and Budge, Givens and Varian, JJ., concur.