263 P.2d 997

**VANEK et ux. v. FOSTER et al.**

No. 7825.

Supreme Court of Idaho.

Jan. 14, 1953.

On Rehearing Dec. 23, 1953.

Porter, C. J., and Thomas, J., dissented.

S. T. Lowe, Burley, for appellants, and Kales E. Lowe, Burley, for appellants on rehearing.

534

William H. Foster and Herman E. Bedke, Burley, for respondents.

KEETON, Justice.

The parties to this proceeding will be referred to as they appeared in the trial court. Appellants will be referred to as plaintiffs, respondents as defendants.

By the terms of a written contract entered into on the 20th of February, 1950, defendants T. D. Foster, Jr. and the Foster Company, agreed to sell and plaintiffs agreed to buy the North 30 ft. of Lot 3, and the South 20 ft. of Lot 4, Block 7, Homeland Addition to Burley, Idaho, for a consideration of $7,100. The contract of sale and receipt for the down payment of $800 was signed:

"The Foster Co.
 T. D. Foster, Jr.,
 Seller"

The complaint set out the contract haec verba, alleged performance in full on the part of the plaintiffs, and failure and refusal of defendants to perform, asked for damages for failure to timely comply and that the contract be specifically performed.

The complaint further alleged that the Foster Company was a co-partnership, that the defendant T. D. Foster, Jr. was the owner of the legal title to the property, and the Foster Company was the equitable owner.

The answer was a general denial. No affirmative defense was alleged.

At the time the contract of sale was entered into, the Foster Company or T. D. Foster, Jr., did not own the premises in controversy. Whatever title the defendants, or either, had in the property at the time of the trial was acquired by it or him subsequent to entering into the contract of sale.

On evidence introduced, the court found that the defendant T. D. Foster, Jr. was doing business under the name of the Foster Company, and was the owner of the premises described in the complaint; that the contract in question was entered into between the parties; that the plaintiff had paid $800 on the purchase price; that the balance was to be paid by a Federal Housing Administration Loan in the sum of $6,300 to be paid monthly for 240 payments; that the property was to be conveyed by warranty deed, and bill of sale, free and clear of incumbrances, with certain unimportant exceptions. The court found that the Foster Company did not exist except as a trade name of the defendant Foster, and that it did not agree to convey said premises to the plaintiff.

The court further found that the plaintiffs had demanded compliance of the contract on the part of the defendant Foster, and that he had failed and refused to execute and deliver a deed conveying the property in question; that plaintiffs, so far as they were able, without default on their part, timely did and performed all things required of them by the contract of purchase, and plaintiffs have been and are ready and willing to execute all documents required of them by the contract upon delivery of the deed to said premises, and that there was no failure on the part of the plaintiffs timely to do or perform any act required of them; that the agreement provided for the construction and completion on or before May 1, 1950, of a dwelling house on the premises so sold and purchased, and such plans and specifications had been approved by the Federal Housing Administration; that the dwelling house was not completed or placed in such condition as could be used prior to September 6, 1950, and possession of the premises was not at any time surrendered or delivered to the plaintiffs.

The court found that plaintiffs had made a further payment of $70 on the purchase price because of a change in the original plans and specifications of the dwelling so constructed, and found that the use and occupation of the dwelling house in question was worth the sum of $60 per month.

The court concluded that the receipt and agreement to purchase was not a valid and enforceable contract against the Foster Company, a copartnership, for the reason that the Foster Company did not at any time exist as a copartnership, and further concluded that whether or not T. D. Foster, Jr. was liable on the contract in question was not within the issues, and that by reason of the non-existence of the entity whose contract as seller is alleged in the

complaint, namely the Foster Company, the trial court cannot conclude that the receipt and agreement to purchase was breached by the Foster Company, and declined to rule whether or not T. D. Foster, Jr. was personally liable; further that by reason of the non-existence of the entity whose contract said "Receipt and Agreement to Purchase" is alleged to have been executed, plaintiffs are not entitled to a decree of specific performance, or to recover damages.

The court then concluded the plaintiffs should have back the money paid in the sum of $870, together with interest.

 contend that on the findings thus made, they are entitled to a decree of specific performance and for damages for the failure of defendants to timely comply with the terms of the contract.

"* * * Contracts, obligations, and transactions entered into under an assumed or fictitious name are valid and binding * * * if there is no doubt with respect to the identity of the person acting under the assumed or fictitious name. Their validity as to third persons does not depend on whether the person contracting is as well known by the assumed name as by his true name, but on whether, with respect to the particular transaction, the name is used in good faith by the person adopting it as a descriptio personae." 69 C.J.S.Names, § 9a, p. 10.

██ In this case, the identity of the defendant Foster as being the same person as the Foster Company or as Thomas D. Foster, Jr., was established by findings of the court. Contracts for the sale of real estate cannot be avoided on the extremely technical grounds advanced here. Such contracts between seller and purchaser are not entered into for the purpose of trapping the unwary, unskilled, gullible, credulous, misinformed, trusting buyers. Whether the title to the real estate in question is owned by the defendant, T. D. Foster, Jr., or the Foster Company, as a copartnership, or a trade name, is of no importance. Both were made defendants to the action and filed a joint answer. When the action was commenced plaintiffs had reason to believe that the Foster Company was a copartnership. The fact that it developed during the trial that it was a trade name is inconsequential for a determination of the rights of the parties to the contract. Plaintiffs had no way of knowing the identity of the Foster Company until the court made findings of fact.

██ Defendants contend that whether or not defendant Foster and the trade name of the Foster Company could be required to convey the property in question pursuant to the terms of the contract is not within the issues. With this contention we do not agree.

The complaint asked that the property be transferred to the alleged copartnership.

of the Foster Company and by it to the plaintiffs, or in the alternative, directly to plaintiffs, and further asked for general relief as plaintiffs might be entitled to.

█ It was within the jurisdiction of the trial court to grant any relief consistent with the proof and embraced within the issues where an answer is filed and a matter is tried on the merits.

Sec. 10–704, I.C. reads:

"The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint embraced within the issue."

The question involved in this case is whether or not the defendants, either or both, have bound themselves, or either, to perform the obligations contained in the contract. We hold that they have.

The terms of the contract, and the identity of the parties were fully established. The court had jurisdiction to grant the relief sought, or other relief consistent with the proof. Schlieff v. Bistline, 52 Idaho 353, 15 P.2d 726; Burke Land & Livestock Company v. Wells Fargo & Co., 7 Idaho 42, 60 P. 87; Dover Lumber Company v. Case, 31 Idaho 276, 170 P. 108; Dennis v. Cooperative Pub. Co., 46 Idaho 534, 269 P. 82.

█ Where a court has acquired jurisdiction to make equitable disposition of a case, he has jurisdiction to do equity even though its disposition may be grounded upon some theory not set forth in the pleadings. Stearns v. Williams, 72 Idaho 276, 240 P.2d 833; Parsons v. Kootenai Rural Electrification, 71 Idaho 510, 234 P.2d 828.

█ In this proceeding no showing was made and the court did not find that the defendants could not perform. No affirmative defense was alleged. Only a general denial was pleaded. See Wormward v. Taylor, 70 Idaho 450, 221 P.2d 686. The facts on the issues thus joined were found against the defendant. A trade name or a descriptio personae cannot be used for the purpose of avoiding a liability voluntarily assumed and thus perpetrate a fraud on an innocent, unsuspecting purchaser.

The judgment is reversed with instructions to the trial court to enter a decree granting specific performance of the contract in accordance with its terms and for the damages suffered by the plaintiffs for defendants' failure to timely comply. Should it develop for any reason, that the defendants cannot comply with the contract according to its terms, then the court to find and fix the damages suffered by plaintiffs by reason of defendants' failure or inability to perform. In fixing damages suffered by plaintiffs the court may, if it seems desirable, take further testimony as to such damages. Costs to appellants.

GIVENS and TAYLOR, JJ., concur.

538

PORTER, Chief Justice (dissenting).

Appellants, by their complaint, pleaded that the defendant, the Foster Co., was and is a copartnership and "that at all times hereinafter mentioned, the defendant T. D. Foster, Jr., was and now is the holder of the naked legal title, and The Foster Company is the equitable owner of that certain real estate" described in the complaint. Appellants tried their case on such theory, which theory made immaterial the marital status of T. D. Foster, Jr., and obviated the question of community property.

Respondents filed a general denial to the complaint. During the course of the trial it incidentally appeared that T. D. Foster, Jr., at the times in question, was a married man, but when respondents attempted to make direct proof of his marital status, appellants objected upon the ground that the marital status of T. D. Foster, Jr., at the time the contract of sale was entered into was not within the issues; and the court sustained the objection.

The trial court found that the Foster Company was not a copartnership but was merely a trade name; and the trial court specifically declined to rule whether or not the contract of sale was binding upon T. D. Foster, Jr., personally, for the reason that such liability was not within the issues formed by the pleadings or consistent with the theory upon which the cause was tried and said defendant had not been called upon or had opportunity to plead or advance any defense he might have thereto.

The majority opinion states that at the time the contract of sale was entered into on February 20, 1950, the premises in controversy were not owned by respondents. It is true that formal deed to the premises was made to T. D. Foster, Jr., and Esther Foster, his wife, under date of June 5, 1950. However, the uncontradicted testimony of T. D. Foster, Jr., was that he acquired such premises prior to the execution of such contract of sale. He testified as follows:

"Q. And where did you—when did you buy this land Mr. Foster? A. Which land, block 7, the last five homes?

"Mr. Foster: Yes.

"A. Acquired it from Mr. Goold.
"Q. When, approximately when? A. Approximately the first of, well let's see, right around the first of January, 1950, I believe about then."

The majority opinion holds that the evidence shows a personal liability on the contract of sale on the part of T. D. Foster, Jr., but ignores the fact that the evidence also shows that the property was acquired during coverture and is presumed to be community property.

The majority opinion directs the entry of judgment for specific performance. This court has repeatedly held that under the provisions of Section 32-912, I.C., a

contract for the sale of community real estate not signed and acknowledged by the wife, is unenforceable and void. Coppedge v. Leiser, 71 Idaho 248, 229 P.2d 977, and cases cited. In Childs v. Reed, 34 Idaho 450, 202 P. 685, a judgment on such a contract of specific performance or in lieu thereof damages, was held to be in excess of the trial court's power and void. The court said, 34 Idaho 455, 202 P. 686:

> "Appellant's ability to perform his contract, so far as the conveyance of their community property was concerned, depended upon securing his wife to join with him in executing and acknowledging the deed. It was formerly the practice in England in such a case for the court to order the husband to procure his wife's consent, and to imprison him until he succeeded. It is now held that performance is impossible, and therefore will not be decreed (Pomeroy on Specific Performance, § 295, note; 2 Pomeroy on Equitable Remedies, § 756, p. 1272), and that the husband ought not to be put in a position by a court of equity to tempt him to coerce his wife to join him in a deed (Barbour v. Hickey, 2 App.D.C. 207, 24 L.R.A. 763)."

In the instant case, the wife neither signed the contract of sale nor is a party to this suit. In my opinion the decision of the majority in ordering specific performance is directly contrary to the holding in the Childs case and, in effect, overrules the same.

The majority opinion further orders that if specific performance cannot be had, damages be assessed for defendants' failure or inability to perform the terms of the contract of sale. In the Childs case the court stated that it was not deciding whether an action at law for damages for a breach of the contract could be maintained. This right to damages is granted in the instant case without pleading, proof or briefs on the question of such right.

I am of the opinion that if the judgment of the trial court is to be reversed, then the cause should be remanded with directions to permit the parties to amend their pleadings if they so desire, to interplead on the issue of personal liability under the contract on the part of T. D. Foster, Jr., for specific performance or damages.

I am authorized to say that THOMAS, J., concurs in this dissenting opinion.

## On Rehearing.

KEETON, Justice.

Rehearing was granted in the above matter and re-argument had on the 9th day of November, 1953. The issues presented have again been examined.

The primary purpose of the contract sued on was to secure construction of, and title to, a dwelling on land described in the contract. In the construction of the

dwelling defendants were to furnish all labor and material, perform all work and convey the dwelling and land by warranty deed to plaintiffs, free and clear of incumbrances. It appears from the testimony that defendant Foster was in the construction business, that is, making improvements on land and selling the same to purchasers under a plan of the Federal Housing Administration. The latter organization took mortgages on the land and improvements and advanced the money to pay the balance due when the improvement was completed and approved. The Federal Housing Administration approved the loan in the instant case, and stood ready to pay over the money when the defendants performed and conveyed a good title to plaintiffs. Plaintiffs executed all papers required by the contract, and the Federal Housing Administration agreed to advance the money to pay defendants, the loan to be repaid by plaintiffs at so much per month.

In the findings the court found that plaintiffs had performed all acts required of them by the contract to be performed. Defendants refused to perform, for what reason does not appear, and no valid excuse or reason is disclosed by the pleadings or the testimony.

As stated in the original opinion, title to the land in question was conveyed to defendant Foster subsequent to the time the improvement on the land, under the contract, should have been completed. The deed dated June 5, 1950 (defendants' Exh. 2) describes Thomas D. Foster, Jr., and Esther Foster, his wife, as grantees. This is subsequent to the time the dwelling should have been completed and conveyance to plaintiffs made (May 1, 1950).

The issue of the property being community property, if it was, was not raised by the pleadings. The wife was not a party and has not here asserted any interest in the land or the contract. The legal principles involved are very similar to those discussed in Morgan v. Firestone Tire & Rubber Co., 68 Idaho 506, 201 P.2d 976.

When the land was conveyed to Foster and wife, the rights of plaintiffs in the land and improvements had already accrued and defendant Foster acquired the land, or his interest in it, subsequent to the contract of sale, in which he agreed to convey to plaintiffs.

The character of community property is vested at the time of its acquisition, and the wife's interest, if any, vested at that time (June 5, 1950).

It should also be noted, in the findings the trial court found that defendant Foster was the owner of the premises described in the complaint. Being the owner, and the question of community property, if any, being only incidentally involved or mentioned, we conclude that Foster was, or should have been, in a position to comply with the contract and no legal reason appears why he should not do so. He had contracted to make a good merchantable title.

The husband, as manager or agent of the community, could acquire realty subject to liens or outstanding rights of third persons. This he did in this case.

We adhere to the opinion as originally written and the conclusion reached.

GIVENS and TAYLOR, JJ., concur.

PORTER, C. J., and THOMAS, J., dissent; and continue to adhere to the original dissenting opinion filed herein.