[Civ. No. 9022. Second Appellate District, Division One.—April 12, 1935.]

LILIAN GARNETT BRAND et al., Respondents, v. FRED H. MANTOR, Appellant.

S. S. Hahn, M. C. Spicer, W. O. Graf and Phi O. Clough for Appellant.

Henry Haves and Michael M. Moser for Respondents.

ROTH, J., *pro tem.*—Respondent Brand and her daughter, respondent Cole, met appellant at the home of a mutual friend on or about October 10, 1928, and thereafter they all met with frequent regularity. During the course of these contacts, appellant learned that respondent Brand was to come into a cash inheritance of approximately $60,000 from the estate of an aunt. Appellant had been presented to respondent by the mutual friend in good faith as an honorable and reputable person, and one unusually skilled in the handling of real estate transactions, which recommendations appellant modestly reiterated, and added: " . . . that he could give me (respondent Brand) wonderful bargains, because he had the inside track, that I would not otherwise ever have an opportunity to buy at such prices". Respondent Brand had said to appellant that "a lot of people make money on real estate, and I wished I could, and he said 'Well, you can', and suggested we look at some properties". Appellant offered his services to respondent Brand to assist her in getting distribution of her aunt's estate and wrote several letters to the executor thereof for that purpose. The bequest was shortly obtained, and the parties thereupon proceeded to spend the money. A number of parcels of property were spoken of and looked at and purchases made. The evidence shows and the trial court found as a fact that both respondents were inexperienced in business and real estate matters; that they made no independent investigation and had no appraisals of the parcels purchased, but relied upon the judgment of appellant. It is also shown that of the purchases so made, appellant with reference to four of them caused the properties to be sold to himself, but by means of separate escrows apparently effected a direct sale from the original owners to respondents. In each instance appellant had purchased the property for a substantial sum less than the price paid by respondents, and the difference between the price paid by respondents and the

price at which appellant had contracted to buy, through the medium of the separate escrows, would gravitate to the escrow in which appellant was named the purchaser and beneficiary, and thus eventually into his pocket. The judgments of $23,834.33 in favor of respondents, and of $9,479.23 in favor of respondent Brand alone represent the aggregate of the secret profits, together with interest thereon from the date of appropriation, which appellant sequestered for himself, although his promise had been to make money for respondents.

Respondents, of course, knew nothing of these secret profits, and did not know that appellant had already contracted to buy the four parcels in question and that they were, therefore, in legal and practical effect making the purchases direct from him. When the facts were discovered, two separate actions were brought; one for money had and received, and another in a multiplicity of counts sounding in fraud, which second action was eventually amended to state causes of action predicated on the theory of a gratuitous agency existing between respondents and appellant, as result of which relationship the appellant agent and fiduciary, through double dealing and bad faith, had swindled his principals by the method outlined in the amounts already mentioned. Both actions were consolidated and tried at the same time, and a judgment in favor of respondents was rendered on counts 8, 9, 10 and 11 of the second cause of action, as and for a judgment in both actions. From the single judgment thus entered this appeal is taken.

There is no dispute as to the facts which have been already generally summarized. Appellant's sole point seems to be that there is no adequate proof of agency, and if there is no agency there is no fiduciary relationship, from which it follows that the parties dealt at arm's length. ██ This appeal is by the alternative method, the reporter's transcript comprising more than 300 pages of evidence. Under rule VIII of the rules of this court and the law, Code of Civil Procedure, section 953c, this court is not required to look beyond such testimony as is printed in the briefs or specifically called to our attention by appropriate references to the transcript. We have, nevertheless, made an examination of the transcript, since of the total of all evidence taken,

only five pages have been called specifically to our attention. Some of the evidence which has thus been called to our attention is as follows:

"Q. During any of the period that he treated you to dinners and gave you gifts, you never engaged him as your agent to act for you, did you? A. Well, not in any writing; it was generally understood, he told me that he would, if I would leave things in his hands he would do the very best he could for me, and get the best bargains in property. . . .

"A. No. It was generally understood between us that he was taking care of everything for me, and I considered him as my agent. . . .

"Q. Now, you say that you understood that he was your agent, and so forth. Did you pay him for making these transactions for you as your representative? A. He was supposed to be getting his money from the other people. . . .

"Q. What conversation did you have with him when he said he was going to get his money for services from the other side? A. I didn't have any conversation.

"Q. Then why did you tell the court he was to get his money from the other side? A. Well, anybody would know it; I just know when you sell property, somebody pays you a commission. . . .

"Q. —You never paid him anything, did you, for anything, for negotiating the sale of this property; you didn't pay him any cash, did you, or anything of value? A. —Certainly not, he was selling for other people, he was getting his commission there, why should I pay him?"

The court found as a fact: "That the plaintiffs believing the representations of said defendant, did repose their trust and confidence in said defendant and did appoint such defendant the agent of the plaintiffs for the purpose of purchasing real property. . . . that by reason of said trust and confidence a fiduciary relationship resulted, wherein and whereby the said plaintiffs entrusted said defendant to purchase for the said plaintiffs certain real property in the County of Los Angeles, State of California, as the agent of said plaintiffs." And also: "That the defendant continued to act as the agent of the plaintiffs as hereinabove set forth, for the period commencing on or about October

10, 1928, up to and including on or about the 1st day of January, 1931."

Even a cursory examination of the evidence, if indeed the excerpts printed in the appellant's own brief are not sufficient, satisfies us that there is sufficient evidence in the record to support the court's finding of agency, even though we concede, which we do only for the purpose of argument, that the agency was a gratuitous one. In view of the undisputed evidence that the appellant was expected to receive commissions even if such commissions were paid by third parties, there may be a real question as to whether the agency was in fact a gratuitous one, when the situation is one, such as here, where a sale is not an isolated one to a buyer who is found or comes in to buy, but one which comprises a continued course of dealing involving many sales for a person who has in effect authorized another to buy. (*Teats* v. *Caldwell*, 28 Cal. App. 206 [151 Pac. 973].) However, we are not called upon to decide that question.

Granting to appellant that the burden of proving the acceptance of the agency or proving the agency is upon the principal (*McCoy* v. *Weber*, 38 La. Ann. 418), and that in order to charge the agent as trustee, the principal must show the acceptance of the agency (*Amber Petroleum Co.* v. *Breech*, (Tex. Civ. App.) 111 S. W. 668), and that an appellate court is not justified in sustaining a finding "when it has not the support of substantial evidence" (*Monsen* v. *Monsen*, 174 Cal. 97 [162 Pac. 90]), it seems clear to us that the agency was created, that it was accepted with avidity, and that there is substantial support in the evidence to sufficiently demonstrate these facts. Mechem in his work on Agency, 1914 edition, volume 1, section 211, pages 155, 156, says: "While it is thus true that authority to act as an agent can usually arise only at the will and by the act of the principal, that will and act may find expression in a great variety of ways. Usually, no particular method of expression is essential, and the range of possible forms is ordinarily as wide as the domain of human action. Thus, an agent may, in a given case, be appointed by written instrument or by word of mouth. His appointment may be implied from the conduct of the parties and that conduct may often be active or inactive, and consciously or perhaps unconsciously directed to that end. . . .

"Notwithstanding the fact that in the ordinary case the law does not insist upon any particular form and concerns itself rather with the fact than with the method, there are two classes of cases—one arising under the rules of the common law and the other under statutes—in which the authority *must* be conferred in a particular way."

In 1 California Jurisprudence, page 790, it is said: "While a gratuitous agent cannot be compelled to enter upon the performance of any agency, nor be mulcted in damages for his failure to do so, when he does enter upon such performance he is, in common with all other agents, bound to exercise the utmost good faith in dealing with his principal. He is bound, not only to exercise good faith, but also to obey the instructions of his principal, and to use ordinary diligence in executing what he has voluntary undertaken to do. . . . No man can be compelled to don the yoke of special, unremunerated duty to another, but when that yoke is voluntarily assumed, the wearer will not be permitted to lay down his burden when profit results from detriment suffered by the other party. . . . " (*Teats* v. *Caldwell, supra; Samonset* v. *Mesnager,* 108 Cal. 354 [41 Pac. 337] ; *Lem* v. *Wilson,* 27 Cal. App. 512 [150 Pac. 641] ; *McPhetridge* v. *Smith,* 101 Cal. App. 122 [281 Pac. 419].)

█ The only other point made by appellant is that if he was the agent of respondents to buy real estate, then such contract of agency is void, since there was no written contract, as required by section 1624, subdivision 5 of the Civil Code. The section in question is for the protection of owners against unfounded claims by brokers, and has no application here. (*Kennedy* v. *Johnson,* 109 Cal. App. 662 [293 Pac. 698] ; *Johnston* v. *Porter,* 21 Cal. App. 97 [131 Pac. 69] ; *Gorham* v. *Heiman,* 90 Cal. 346 [27 Pac. 289].)

The judgment is affirmed.

Houser, Acting P. J., and York, J., concurred.