The STATE of Oklahoma, Plaintiff in Error,

v.

Georgie G. HAMILTON, Defendant in Error.

No. A-12310.

Criminal Court of Appeals of Oklahoma.

May 29, 1956.

Rehearing Denied July 18, 1956.

Gerald W. Thomas, County Atty., Ellis County, Arnett, for plaintiff in error.

Tom Z. Wright, Woodward, for defendant in error.

POWELL, Judge.

Herein the parties will be referred to as in the trial court. The State of Oklahoma charged the defendant, Georgie G. Hamilton, by information with the offense of obstructing a public highway, in that he had fenced across a certain designated section line in Ellis County. Trial by jury was waived by the parties, and the case was tried before a special county judge, upon an agreed statement of facts. The defendant demurred to the evidence thus submitted, and after argument the court sustained the demurrer, and discharged the defendant. Thereupon, the State excepted to the ruling of the court and gave notice in open court of its intention to appeal to this court on certain reserved questions of law.[1] Appeal has been duly perfected.

The charge was filed under 69 O.S.1951 § 592, which provides:

"Any person or persons who shall wilfully or knowingly obstruct or damage any public road by obstructing the side or cross drains or ditches thereof, or by turning water upon such road or right-of-way, or by throwing or depositing Osage orange or other brush, trees, stumps, logs, or any refuse or debris whatsoever, in said road, or on the sides or in the ditches thereof, or by fencing across or upon the right-of-way of the same, or by planting any hedge within the lines established for such road, or by changing the location thereof, or shall obstruct said road, highway or drains in any other manner whatsoever, or any person or persons who shall wilfully or knowingly deface, damage, destroy or remove any road sign, sign board, guide sign or sign post shall be deemed guilty of a misdemeanor, and, upon conviction,

1. Tit. 22 O.S.1951 § 1053.

shall be fined not less than five dollars nor more than two hundred dollars, or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment. The road overseer of any district who finds any road obstructed as above specified shall notify the person violating the provisions of this section, verbally or in writing, to remove such obstruction forthwith, and if such person does not remove the obstruction within ten days after being notified, he shall pay the sum of five dollars for each and every day after the tenth day, such obstruction is maintained or permitted to remain; such fine to be recovered by suit brought by the road overseer, in the name of the road district, in any court of competent jurisdiction."

The case was defended under sections 281 and 282 of Title 69, O.S.A.1951, providing for grazing districts and making lawful the fencing of section lines therein under the provisions there enumerated.[2]

The stipulation as to the facts is rather lengthy, so that the material parts will be in most part summarized.

The record discloses that the defendant and his neighbor, Charles Campbell, owned or leased 1,520 acres of contiguous lands in Ellis County, more than two-thirds of which was unsuitable for cultivation, and more than two-thirds of which was being used for grazing purposes. Approximately four weeks prior to the filing of the information, the defendant and Campbell entered into a written agreement to form a grazing district, purportedly under the provisions of 69 O.S.A.1951 § 281, and a copy of said agreement was filed with the

Board of County Commissioners of Ellis County, and a copy with the County Attorney of that county.

It is agreed that the area in question is deep rolling and covered with shinnery and bunch grass, and that on the average approximately 30 or 40 acres of such lands are required on an animal basis to support a cow and calf, and that there are no natural surface streams or ponds and that underground water when it is found is at a depth of around 200 feet, which, the parties agree, makes the cost of wells prohibitive for small pastures.

It is further stipulated that on June 14, 1955 Charles Campbell, defendant's neighbor, was the owner or lessee of 160 acres of grazing land in section 4, township 19 north, range 21 west of the Indian Meridian, being the southeast quarter of said section; and that the defendant was the owner or lessee of 1,360 acres of grazing lands in sections 3, 4, 5 and 6, in township 19 north, range 21 west, and sections 32, 33 and 34 of township 20 north, range 21 west.[3]

The road herein complained of is stipulated as being a road an "indefinite" distance west of the section lines involved, being a north-south roadway between sections 3 and 4 running through the east edge of section 4 west of the section line; that at the northern end of this road between sections 3 and 4 it continues to the north, partly on defendant's land in section 33, and partly on the section line. The road is not used as a mail route. There is a swinging gate at the north end of the road as it leaves defendant's property, and there is a swinging gate at the half-section line between sections 3 and 4 on the lands of Charles Campbell just before it enters de-

---

2. See Tit. 4, O.S.1951 § 94, the "Herd Law" statute, Tit. 69 O.S.1951 §§ 281–284, being exceptions thereto. The Congress of the United States reserved land two rods wide on each side of all section lines for highway purposes. See 43 U.S.C.A. § 1095; Salyer v. Jackson, 105 Okl. 212, 232 P. 412; Mills v. Glasscock, 26 Okl. 123, 110 P. 377.

3. Not material here is the stipulation that the defendant was also the owner or les-

see of 5,250 acres of grazing lands just north of the tract here in question and in Woodward County, but not quite connected, with no roads and all section lines fenced up. Also that defendant had been the lessee for a number of years, but had then lost his lease on 320 additional acres of land in section 4. This apparently brought about his agreement with his neighbor Campbell whereby it was sought to connect up his lands in section 3.

fendant's lands as it goes north. It is stipulated that the gates, along with the bearing and holding posts thereof, comply in all respects with the requirements of 69 O.S.A. 1951 § 282.

It is stipulated that the Board of County Commissioners of Ellis County on June 7, 1955 caused defendant's cattle guards beside the swinging gates in question to be destroyed and thereupon defendant fenced up the spaces, formerly occupied by the cattle guards. Defendant stipulated: "That defendant will permit public road designated by the County Commissioners of Ellis County, Oklahoma, to be run anywhere across the lands owned or leased by him in Ellis County. * * * Further, defendant will erect substantial swinging gates, complying in all respects with Section 282, Title 69 O.S.A., at any place said designated public road or roads intersect a fence line of the defendant."

"That defendant has not fenced across and closed to public travel or otherwise obstructed the road running north and south between sections 33 and 34, unless the use of the swinging gates under the facts as stipulated herein constitute such."

It is further stipulated that a rural mail route runs along the section line between sections 4 and 5; that when defendant lost his lease on certain lands in section 4 some time previously he built a fence down the east section line of section 5 in order to separate his lands from those he no longer leased, and that defendant actually, on a temporary basis, extended the fence to the southeast corner of section 5 in order to reseed and practice deferred grazing; that grass had burned on part of said lands; that the rural mail route passing north between sections 4 and 5 is 58 miles in length and there are 18 cattle guards crossed by the road to the north on lands other than defendant's.

It is further stipulated:

"12. That a fence surrounds the whole of the said 1520 acres owned by the defendant and his said neighbor, Charles Campbell; but as stated the whole 1520 acres are cross-fenced as indicated in paragraphs 5 and 11 above; and the outside fence on said 1520 acres is not connected together at the *presence* time and has not been so connected since the fall of 1952 where the rural mail route runs through said 1520 acres, but defendant claims and asserts the right to reconnect said outside fences, all as set forth in paragraph 11 above.

"13. Custom and prudent practices in the operation of cattle ranches require that a ranch's lands be divided by fences to provide for the following as a general rule: Farmstead, corrals, horse pasture, hospital pasture, bull pasture, two or more range pastures for rotating grazing, and any hay meadows or farmlands. That the grazing lands of townships 19 and 20, north or range 21, W.I.M., and of townships 19 and 20 north, of range 22, W.I.M., described in paragraph 4 above, were and are being used for the grazing of cattle."

In its brief the State says:

"There is only one question of law involved, which is whether the court was correct in finding that defendant owned a grazing district as provided for by 69 O.S. §§ 281, 282, 283 and 284."

Counsel contends that the court erred in its ruling in that:

"1. The provisions of Section 281 contemplate and require two square sections—and the proposed district in Ellis County, Oklahoma, did not contain two square sections.

"2. Two or more owners or lessees of land may not by agreement between themselves create a grazing district as was attempted by the defendant and his neighbor Campbell.

"3. If two or more owners or lessees of land may by agreement create a grazing district, the agreement of the defendant and his neighbor Campbell was not effective for such purpose because they did not practice joint use thereof.

"4. The provisions of Section 281 contemplates and require that the district be under one fence, around the

outside of it, and breaks in the outside fence and cross-fencing in this case ruined the existence of the district.

"5. The provisions of Section 281 contemplate and require that the lands owned or leased shall be contiguous, and defendant's were not contiguous."

For a quicker grasp of the situation presented by the agreed statement of facts, we shall by plat show, (1) the 1,520 acres of land involved, indicating lands used by defendant and lands used by Campbell; and (2) the location of the county road in controversy, as well as the mail route that will be considered in connection with argument presented by the State.

In seeking a solution to the issues raised we have commenced our study by referring to Senate Bill 27 as enacted into law by the 1913 Legislature and to be found at page 98, Chap. 61, S.L.1913.

It is entitled:

"Chapter 61. Highways—Fencing Across Section Lines Permitted in Grazing Districts. Senate Bill No. 27. An Act establishing grazing districts

·of rough lands and closing section lines under certain conditions.

"Be it Enacted by the People of the State of Oklahoma:

"Fences across section lines permitted—conditions—counties excepted."

Then follows four sections of conditions, covering strictly the matter of fencing. However, the law was amended by the 1927 Legislature, S.L.1927, Chap. 54, p. 75, by the addition of provisions covering grazing. There have been other minor amendments as to counties covered.

 While we are here concerned directly only with the question of fencing, a consideration of the grazing provisions will aid in the determination of the legislative intent, which should ordinarily be done by consideration of the language of the statute where such inquiry becomes pertinent; and courts should not read into a statute exceptions not made by the legislature.[4] We shall italicize the 1927 provisions. The present provisions, 69 O.S.A.1951 §§ 281, 282, 283 and 284, are in the same form as enacted in 1913, except the second sentence of Section 281 (here italicized) is not included, and amendments of 1921 and 1953 as to counties covered:

"In districts composed of two or more sections of land, two-thirds of which is unsuitable for cultivation and is being used for grazing purposes, it shall be lawful to erect and maintain fences across section lines; provided, the owner or lessee of such grazing districts permits public roads to be run anywhere across said district designated by the road overseer, township board, county commissioners, or other official, legally authorized to designate public highways. *If the owner or lessee of any such grazing district encloses therein the lands of another, which lands are not being used for agricultural purposes, neither said owner or lessee or the owner or the lessee of such lands so enclosed, shall be liable in any sum for permitting their respective stock, which are being pastured on their said lands, to stray on any of the lands in said grazing district; provided, that no such owner or lessee who is grazing stock at large in said district, shall graze therein more stock than the water and grass of his own lands will support.* Where fifteen or more land owners or lessees, residents of the locality affected, object to the fencing of certain section lines, or there is a dispute as to the character of the land, it shall be the duty of the County Commissioners to act as a board of inspectors to determine the character of the land, and their decision shall be final; and, provided further, should said section line so closed be at any time needed for a public highway to be used for a rural mail route, the owner or lessee shall immediately open such section line, and in case he neglects or refuses to do so, it shall be the duty of the township board and road overseer to open such section line; provided, that this act shall not apply to the following counties: * * *." (Italics ours.)

Section 282:

"On each point where public roads intersect, a fence enclosing such grazing district, the owner, occupant, or lessee shall erect a substantial swinging gate, which shall swing clear of the ground and be easily opened and closed. At right angles to the fence, he shall erect posts, so set, with strong latches applied thereto, that when the gate swings open, the ends thereof can be secured and held firmly for temporary passage of stock or vehicles."

Section 283:

"Any owner, occupant or lessee of such grazing district who refuses to permit a road to be run anywhere through such enclosed designated district as laid out by the road overseer, under the direction of the township board, or neglects or refuses to erect gates where said roads intersect fences surrounding said enclosed district, shall be fined not less than fifty dollars, nor more than one hundred dollars, at the

---

4. City of Bristow ex rel. Hedges v. Groom, 194 Okl. 384, 151 P.2d 936.

discretion of the court. Each day that he neglects to erect said gates or prevents roads being laid out, after notification by the road overseer, shall constitute a separate offense."

Section 284:

"Any person who leaves open the gates to such grazing district when properly erected so they will swing clear and open easily, or any person who shall tear down or demolish said gates, shall be fined in any sum not less than twenty-five dollars nor more than fifty dollars."

The above statutory provisions have been construed twice. The first time was in 1919 prior to the 1927 amendment, in the case of Duncan v. State, 16 Okl.Cr. 175, 181 P. 736, in a case likewise arising in Ellis County. We have obtained the record and briefs in that case in connection with a study of the opinion by this court, as we have in the later case construing the statute after the 1927 amendment, and being Yunker v. State, 53 Okl.Cr. 82, 7 P.2d 916.

The Duncan case is not very helpful. In that case the defendant waived a jury and defended on two grounds; the first being that having more than two sections of land and having complied with the provisions of Section 1 of Chapter 61, Session Laws 1913, 69 O.S.A. § 281, that he had not violated the law. He also offered as a defense the fact that after he was charged the Board of County Commissioners designated his lands as a grazing district and had annulled a previous order to the contrary.

The trial court, it appears, found that Chap. 61, S.L.1913 was a special law and violative of art. 5, § 59 of the Constitution.[5] Judgment was entered against defendant, and on appeal the conviction was affirmed, but on an entirely different ground. His first defense, that he had established a grazing district under the provisions of Section 1 of Chapter 61, S.L. 1913, 69 O.S.A.1951 § 281, was overlooked or ignored, and the second defense to the effect that since the filing of information the Board of County Commissioners had rescinded a prior adverse order and had then designated his lands as a grazing district, was seized upon, and it was held that the defense came too late, the implication being that it was necessary for him to have had his lands designated a grazing district by the Board of County Commissioners prior to the erection of fences. The court so indicates in the body of the opinion. The opinion in the case was prepared by Judge Smith C. Matson.

In Yunker v. State, supra, this court in a brief opinion by Edwards, J., and where Judge Smith C. Matson, then an Assistant Attorney General, represented the State, did not mention the Duncan case, and it was not mentioned in any of the briefs, but nevertheless, it is safe to assume that the Attorney General and this court actually took the Duncan case into consideration. The trial court evidently did, in that in one of its instructions the position was taken that before the defendant Yunker could avail himself of the defense afforded by the statute now under consideration, the burden of proof was upon him to show that the district had previously been designated by the county commissioners as a grazing district, thus the jury was compelled to hold for the State. But this court, on appeal reversed the trial court, and held:

"It is not unlawful for the owner or lessee of grazing lands, within the terms and conditions of section 3975, Comp.Stat.1921, as amended by chapter 54, Session Laws 1927, and sections 3977 and 3978 Comp.Stat.1921 [69 O. S.A.1951 §§ 281, 282 and 283] to fence such grazing lands with a fence intersecting public roads by erecting and maintaining a gate as provided in said sections."

5. The statutory provision in question was in 1937 in the case of Tucker v. Mullendore, 180 Okl. 180, 69 P.2d 35, held by the Supreme Court to be constitutional and not violative of Okl.Const. art. 5, § 59. It was so held in United States v. Mullendore, 10 Cir., 1934, 74

F.2d 286. See also, Inselman v. Berryman, 180 Okl. 136, 68 P.2d 527, holding that the provisions of 69 Okl.St.Ann. § 281 are permissive and not mandatory and do not violate either sections 7, 23 or 24 of art. 2 of the Constitution.

In the body of the opinion this court said:

"It is the contention of the state, and the court in substance so instructed the jury, that chapter 54 is not applicable in any case unless a grazing district shall have been designated by the county commissioners. No provision of law for the creation of a grazing district as provided for in said chapter has been called to our attention. Apparently the grazing districts mentioned in chapter 54 are not the herd law or stock districts defined by section 3929 and following sections of Comp.Stat. 1921, but districts formed by the owners or lessees of grazing lands. The validity of such grazing districts, in case of dispute, to be determined by the county commissioners acting as a board of inspectors. A petition to open and grade the section line was made to the board of county commissioners; but there was no objection by fifteen or more landowners or lessees of the locality to the fencing of the section line, nor dispute as to the character of the land nor finding and order of the board of commissioners as a board of inspectors abolishing the grazing district. Cimarron county being one of the counties within the purview of this law, it was not unlawful for defendant to erect the fence in question and maintain gates."

It has been noted that the jurisdiction of the Criminal Court of Appeals arises by reason of a crime charged for the alleged violation of 69 O.S.A.1951 § 592, and not for the violation of the "fencing and grazing statute", 69 O.S.A.1951 §§ 281 and 282, which constitute an exception to that law. Here the penalty provisions are: First, § 283, refusing to permit a road to be run wherever properly designated and for refusing or neglecting to erect gates; and, second, § 284, providing a penalty for persons leaving open or tearing down gates erected in accordance with the statute.

It is asserted by the State that in this case Hamilton's defense failed in that the lands described as owned by him and as heretofore shown on plat, did not constitute two or more square sections, and that such is true even if the lands of Campbell, his neighbor, are included and even though Hamilton had under fence 1,360 acres and Campbell 160 acres or a total of 1,520 acres.

This contention raises a good point and prior to the 1927 amendment would have been a most difficult contention to dispose of. But now, as argued by counsel for the defendant, it is clear that by the 1927 amendment (the italicized portion of § 281 heretofore quoted) it was recognized that the grazing district might enclose the lands of another, and the description of the minimum area necessary to constitute a grazing district was left unchanged. While lands of others could be enclosed in a grazing district by square sections if one owned many square sections, it is plain that the lands of another could not be enclosed and leave the owner or lessee of lands composing the district in the minimum amount of "two sections of land", with two square sections. We therefore conclude that the phrase "two or more sections of land" are words of description of the area of the district, and not words of limitation governing the shape of the district. Such conclusion is influenced in part by the fact that we are here dealing with a penal case and penal statutes, where ambiguities are to be resolved in favor of the accused. 50 Am.Jur. (Statutes) § 409.

The plaintiff State denies that two or more owners or lessees of tracts of land which are contiguous may create a grazing district by agreement between themselves under the provisions of Section 281.

As this court said in Yunker v. State, supra, the statutes involved provide no procedure for the creation of grazing districts authorized by Section 281, but as we have already said, the 1927 amendment covering the grazing feature approved the enclosing in a grazing district lands of persons other than the owner of the district. Chapman v. Koenig, 1951, 205 Okl. 402, 238 P.2d 357. And although such was the fact in the Yunker case, the opinion was so brief that it has been necessary to examine the record to discover this. Not only that, the road in question there paralleled a neighbor's fenced lands on the west, and by agreement between the parties, Yunker had

been permitted to fence on to his neighbor's fence, thus fencing in the road in question, but with a swinging gate as required by Section 282.

It has been observed that the statutory provisions heretofore quoted, 69 O.S.A.1951 §§ 281, 282, 283 and 284, use the expression "owner or lessee of such grazing district" or "owner or lessee", all in the singular. Does this exclude the plural? Can more than one person own a grazing district? Singular is defined by Black's Law Dictionary, 3rd Ed., as follows:

"Each; as in the expression 'all and singular'. Also, individual. In grammar, the singular is used to express only one. In law, the singular frequently includes the plural. Under the 13 & 14 Vict. c. 21, No. 4, words in acts of parliament importing the singular shall include the plural and *vice versa*, unless the contrary is expressly provided. Whart.Lex."

The general rule on statutory construction found in 50 Am.Jur. (Statutes) § 256, is as follows:

" * * * the general rule is that words importing the singular number may be extended or applied to several persons or things unless such construction would be repugnant to the context of the statute, or inconsistent with the manifest intention of the legislature. * * *"

Many courts have so construed statutes. See Graf v. State, 118 Neb. 485, 225 N.W. 466, 467; New York Cent. & H. R. R. Co. v. Mathews, 144 App.Div. 732, 129 N.Y.S. 828, 829; Wyatt v. Beard, 179 Ark. 305, 15 S.W.2d 990, 991; Steele v. Dye, 81 Kan. 286, 105 P. 700, 702. See also 73 C.J.S., Property, § 13, pp. 186, 187, 189. It has been held, in effect, that the word "lessee" in the singular, includes within its meaning other persons. 51 C.J.S., Landlord and Tenant, § 202, p. 810.

We must take cognizance that our statutes recognize ownership of lands, for example, by tenancy in common, joint tenancy, community, etc., so it seems clear that co-tenants could create a grazing district. They would have communial rights. Inselman v. Berryman, supra, Chapman v. Koenig, supra. It would not be sound argument to say that co-tenants owning a grazing district would lose such favored position if they divided their grazing lands by fences but agreed to retain the whole as a grazing district. The public would not be interested in their method of use of the land for grazing, cattle breeding, or other use. The public's interest under the statutory provisions in question is as to the matter of roads across such grazing district where ordered opened by the proper authorities, and the maintenance of proper gates, after a road is opened. So long as the cross-fencing does not cross a roadway properly designated, and burden the travelling public to open and close more than the two outside gates where the road enters and where it would leave the particular grazing district, we can see no valid ground for complaint by the public. So long as persons grazing livestock within a district, whether communal and in the entirety or whether by separate fenced pastures, are satisfied with such arrangement, the general public has no valid ground for complaint. And when it is realized that Section 281 is both a "fencing" statute and a "grazing" statute, one may readily distinguish between the legal consequences flowing from the statute in its two separate capacities, and there then comes about the realization that private rights only are involved between the enclosed owners within the grazing district, and must be subject only to their own private agreements, where they do not violate some clear and specific statutory provision; while as a "fencing" statute the public is concerned only with the provisions pertaining to roads, including mail routes, gates, and that the lands fenced meet the statutory requirements entitling the same to be classed as a grazing district.

We therefore hold that a grazing district may be owned by one or more owners or lessees, and that so long as the inner or cross fencing does not interfere with such roads as may be designated to

cross the same, the owners or lessees are free to divide up the lands in accordance with good practice in ranch operations.

The State argues that the grazing district here involved is not enclosed by one fence; that is to say, it is stipulated that there is a mail route running along the east side of Section 5, and defendant after losing his lease, on the adjoining lands in Section 4 ran a fence along the east side of Section 5 and also fenced off the west side of the southwest quarter of the southwest quarter of Section 4, and temporarily removed the gates. Thus it is argued, the grazing district was destroyed, because, it is said, the 880 acres have been isolated from the rest of defendant's land in that it is not connected up by the gate. We have already held cross-fencing to be permissible. What detriment would the travelling public suffer by reason of the absence of a gate? The obvious answer is: No detriment. In fact, if cement and steel rails could be used in the construction of cattle guards the width of the road, as on some Federal Highways to be found in New Mexico, in the place of swinging gates, such would, no doubt, be highly appreciated by the motorist, if it should be approved by the board of county commissioners. When the law in question was passed the state of motor car development was so little advanced that the motorist was given scant consideration.

It is the opinion of this court that the fact that the mail route has been temporarily fenced, and without gates, does not destroy the grazing district. The defendant would have the right under Section 281 to fence a mail route across the grazing district, provided, of course, he installed swinging gates, unless some Federal law or rule not pointed out to us, would forbid a mail route to be so fenced.

It is pointed out by the State that the defendant's 400 acres of land in the northeast portion of his ranch is not contiguous with his 960 acres unless made so by Campbell's 160 acres. It is stipulated that Campbell uses defendant's 80 acres, north half of southwest quarter of section 3, and that the south gate to the road in question is on the lands of Campbell. Both the defendant and Campbell were being mutually benefitted by their agreement as to the use of the lands in question, it would appear. Campbell is not complaining about his 160 acres being fenced in with the defendant's lands. He has agreed to the grazing district. Who can complain?

We must, from what has been said, affirm the trial court and hold that the defendant Georgie G. Hamilton and Charles Campbell have effectively formed a grazing district of the lands set out herein under and by the terms of the statutory provisions discussed, and are lawfully entitled to fence the roadway in question by use of swinging gates.

Judgment affirmed.

BRETT, J., concurs.