Henry F. **REIMANN** and Eunice W. Reimann, husband and wife, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 17800.

United States Court of Appeals Ninth Circuit.

April 5, 1963.

Ray W. Rigby and Gordon S. Thatcher, Rexburg, Idaho, for appellants.

Joseph D. Guilfoyle, Asst. Atty. Gen., Sherman L. Cohn, Edward Berlin, Department of Justice, Washington, D. C., and Sylvan A. Jeppesen, U. S. Atty., Boise, Idaho, for appellee.

Before POPE, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

This action arises under the Soil Bank Act, 7 U.S.C. §§ 1801–1837, and particularly § 1831(d). The contract involved is a "Soil Bank Conservation Reserve Contract" entered into by appellant Henry F. Reimann as "producer" on November 24, 1958. Appellant Eunice W. Reimann is his wife, and did not sign the contract. The contract was approved for the Secretary of Agriculture on January 6, 1959. It is of the type authorized by § 1831(a). While it differs from an "Acreage Reserve Agreement," authorized under § 1821(a), it is in most respects similar and in many of its provisions identical to such a contract. We had occasion to consider the provisions of an "Acreage Reserve Agreement" at some length in Shay v. Agricultural Stabilization & Conservation State Comm., 9 Cir., 1962, 299 F.2d 516.

The contract relates to a farm owned by appellants as community property and located seven miles northeast of Ashton, Idaho. Under the contract, 276.8 acres were designated as conservation reserve acreage, to be established and maintained with a permanent cover of grass and legumes for a period of ten years, 1959–68, the maximum period authorized by § 1833(b). This was all of the cropland on the farm. The payments to be made to Reimann under § 1831(b) were annual payments of $4,567.20, and "cost-share payments" of $1,384.00, representing one-half his cost of seed and labor. The contract prohibited his harvesting wheat from the lands affected.

In August of 1958, Reimann had planted approximately 112 of these acres to wheat. In the spring of 1959, he seeded 170 acres to grass. During the spring of 1959, he received both oral and written notices from the county Agricultural Stabilization Committee stating that, to comply with the contract, he would have to destroy the wheat by July 31, 1959. He did not do so, and subsequently harvested the wheat, realizing approximately $7,600.00.

Shortly before July 31, Mrs. Reimann told the county committee that, because she was a producer and owner as well as her husband, and had not signed the contract, it was void and that the Reimanns intended to harvest their wheat.

The procedures outlined in the regulations of the Secretary (7 C.F.R. 750.172 ff., formerly 6 C.F.R. 485.172 ff.) and in § 1831(d) were followed, and the state committee determined that the harvesting of the crop was a knowing and willful violation of the contract, and that Reimann should forfeit the payments that he was to receive (i. e., $4,567.20 plus $1,384.00). The committee also purported to determine that Reimann was liable for a civil penalty, under § 1811, of one-half the foregoing amounts or $2,975.60. These determinations were against Henry F. Reimann alone, not against his wife.

The committee did not determine whether the violation was one "which would warrant termination of the contract" or that "the nature of the violation is such as to defeat or substantially impair the purposes of the contract" (§ 1831(d)). We held, in Shay, supra, that before a forfeiture or refund of all payments can be required, such determination should be made by the committee, and that a regulation (former 6 C.F.R. § 485.286) which purported to establish a flat rule that a knowing and willful violation requires forfeiture is invalid because in conflict with §§ 1831 (d) and 1821. Evidently the committee relied upon a similar regulation here (former 6 C.F.R. 485.294, now 7 C.F.R. 750.294). However, there is no need

to remand for this reason, as we did in Shay, because the Reimanns conceded, in the court below, that the violation (if it was a violation) was such as to warrant termination.[1]

In Shay, we also held that neither the Secretary, the committee, nor the court in an action brought under § 1831(d), has anything to do with whether the former is liable for the penalty prescribed by § 1811 for knowing and willful violations, that question being solely for the court in an action brought to recover the penalty in the name of the United States. The contract form, and the regulations, do appear to provide that the committee shall assess such a penalty. (7 C.F.R. 750.295, former 6 C.F.R. 485.295) In Shay, there was a separate action pending to recover the penalty, and we held that the committee could not assess the penalty, and that it was error for the court to affirm that action. Here, the government counterclaimed for the penalty, as it did in United States v. Maxwell, 8 Cir., 1960, 278 F.2d 206. The trial court considered the matter on the merits, and awarded judgment in favor of the United States on the merits. It gave no weight to the committee's assessment. We think that such a counterclaim is proper, and that the validity of the court's judgment on the counterclaim is properly before us.

Appellants make three points: (1) that the contract is an encumbrance up-on the farm, and is void under Idaho law (Idaho Code Ann. § 32-912 (1948))[2] because Mrs. Reimann was not a signatory; (2) that the Reimanns acted in good faith, so that the penalty is not authorized; (3) that the court should have declared that the contract is terminated.

(1) *The contract is not an encumbrance.*

■■ The government urges that the meaning and effect of the contract is a matter of federal law, so that the state statute does not apply. We are satisfied that the contract is governed by federal law, not state law. But we need not, and do not, decide whether we should adopt, for the purpose of this decision, the law of Idaho as being the federal law in relation to what authority a husband has, and as to what constitutes an encumbrance. (See Sam Macri & Sons, Inc. v. United States for Use of Oaks Constr. Co., 9 Cir., 1963, 313 F.2d 119, 124 n. 1, and cases there cited.) We assume, for the purposes of this case, that Idaho law should be the standard we adopt, since this is appellants' position. But we think that the court was correct in concluding that Reimann did not "encumber" the community real estate by executing the contract, and that the execution of the contract was within his powers of "management and control," expressly established by Idaho Code Ann. § 32-912.

1. In their complaint in the trial court, the Reimanns did not attack the determination of the committee that the annual cost-share payments which had not been paid to the Reimanns, should be forfeited. They attacked only the committee's purported determination that Henry F. Reimann should in addition pay the penalty of $2975.60. At the pretrial, they were permitted to amend their complaint to allege that they were entitled to a declaration that the contract was terminated as of the determination of the state committee. Appellants' theory that the court should have declared the contract terminated rests entirely upon the proposition that the violation is such as would warrant termination under § 1831(d).

2. "*Husband's control of community property.*—The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he can not sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered: provided, that the husband or wife may, by express power of attorney, give to the other the complete power to sell, convey or encumber said community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."

The contract does not purport to sell, or to convey to anyone, any interest in the Reimann farm. Nor does it create an encumbrance, as that term has been defined by the Idaho Supreme Court in Fargo v. Bennett, 35 Idaho 359, 361, 206 P. 692, 693 (1922).[3] The contract does not create an interest in the land; it is a purely personal agreement between Reimann and the Secretary of Agriculture, as representative of the United States. It does not follow the land— either by its express terms or under the statute and regulations that authorize it. On the contrary, both the contract and the regulations say that loss of control of the land by Reimann, including loss of control by sale of the land, would terminate the contract (7 C.F.R. 750.-169(b) (1)), and his successor is not bound by it. For violation, the government's only remedies are personal remedies, for money, against Reimann (§§ 1811, 1831) and termination of the contract (§ 1831). Appellants are frank to say that they have found no Idaho case in point. Their extensive and diligent search and exposition of the Idaho authorities cannot be considered in any detail without unduly extending the length of this opinion. Suffice it to say that all of the cases that they cite involve the creation of an interest in the land, as distinguished from a purely personal obligation. Such authority as there is indicates that a contract creating a purely personal obligation is not an encumbrance under the Idaho statute. (Cf. Abbl v. Morrison, 64 Idaho 489, 134 P.2d 94 (1943)).

Since the contract is a personal agreement relating to the management and control of the farm, and since Reimann's powers include the power to manage and control the community property, Mrs. Reimann's joining in the contract was not necessary. It endures only while he has control, and is merely an exercise of his lawful powers under Idaho law.

(2) *The contention that the Reimanns acted in good faith is foreclosed by the court's findings.*

In essence, what Reimann did was to weigh the amount he thought he might lose by forfeiture ($5,159.20) against what he could get for the wheat ($7,600.00). He chose the latter. He had been repeatedly told that, to comply with the contract, he must destroy the wheat; he knew that, if he harvested it, he would violate the contract. This is admitted. He claims that he did not know that he would also be subject to the penalty provided for under § 1811. Assuming that this is true (although the court did *not* so find), it would make no difference. The penalty is statutory, and affords the government an additional remedy for breach. Surely it is no defense to a charge that I willfully and knowingly breached a contract for me to say, "Yes, I knew that what I did was a breach, and I intended to do it, but I underestimated the damages that I might suffer." Under our decision in Shay, supra, what Reimann did was clearly a knowing and willful breach. The court so found; its finding is not clearly erroneous. On the contrary, it is clearly correct. It is also urged that the Reimanns believed in good faith that the contract was void because Mrs. Reimann did not sign it. The trial court did not believe them and did not have to believe them, nor do we.

(3) *The court lacked jurisdiction to declare the contract terminated.*

Under the statute, termination of the contract for breach by the farmer is an additional, and optional, remedy given to the United States (§ 1831(a) (6) and (d)). It does not automatically occur upon such a breach (see 7 C.F.R. 750.294j, former 6 C.F.R. 485.294j). The committee's authority is to determine whether a breach warrants termination; it was not required, upon making such a determination, to take the

---

**3.** "Every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance."

next step and actually terminate. It would be a most peculiar rule that would allow the farmer to escape his obligations by electing to commit a substantial breach of them.

Since the statute only authorizes a review of the committee's determination, and since the committee was neither required to nor did determine that the contract was terminated, the court had no authority to terminate it. (See Shay, supra.)

Affirmed.