547 P.2d 1116

**C. FORSMAN REAL ESTATE COMPANY, INC., an Idaho Corporation, Plaintiff-Appellant,**

v.

**William N. HATCH and Constance Hatch, husband and wife, dba Bill Hatch Farm, Defendants-Respondents.**

**No. 11791.**

Supreme Court of Idaho.

March 3, 1976.

Vern E. Herzog, Jr., Pocatello, for plaintiff-appellant.

D. James Manning, Racine, Huntley & Olson, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from the summary judgment entered against plaintiff-appellant C. Forsman Real Estate, Inc. and in favor of defendant-respondent William N. Hatch. The action concerns the validity of a real estate brokerage commission contract involving real estate owned by the community of William N. Hatch and his wife Constance. Summary judgment was entered against plaintiff-appellant on his claim for a broker's commission under the contract on the basis that the contract was not executed by Mrs. Hatch and because the property was insufficiently described therein. We reverse and remand for further proceedings.

On October 19, 1972, Forsman and William Hatch entered into a broker's employment contract regarding the "Bill Hatch Farm." That contract was an exclusive real estate listing empowering Forsman to sell or exchange the property on or before March 31, 1973, for $200,000 at specified terms. The contract provided that the broker was to "find a buyer ready and willing to enter into a deal for said price and terms, or such other terms and price as I may accept." In return for which Forsman was to receive a commission of 6 percent of the sale price. Although the subject real estate was admittedly community property, the contract was signed by Hatch and an agent of Forsman but not by Hatch's wife.

During the contract period Forsman found a prospective purchaser who, after some negotiation, executed and signed an earnest money agreement to purchase the Hatch property at $170,000 and at terms significantly different from those in the listing contract. Although there is some question as to whether there was a complete meeting of the minds on all of the essential terms of the earnest money agreement, nevertheless it was signed by William Hatch on March 21, 1973. Constance Hatch, however, refused to sign the earnest money agreement, and the property was later sold for $200,000 to a buyer who was obtained without the assistance of Forsman.

Forsman then instituted this action for his brokerage commission against both Mr. and Mrs. Hatch. Upon motion and stipulation Mrs. Hatch was dismissed from the suit and thereafter, upon Hatch's motion for summary judgment, the district court granted summary judgment on the grounds of insufficiency of the property description and the absence of the wife's signature to the brokerage contract.

Appellant Forsman assigns error to the district court's entry of judgment on the basis that a real estate commission contract employing a broker to find a purchaser of community realty must contain the execution and acknowledgement of both spousal owners. *Thomas v. Young*, 42 Idaho 240, 245 P. 75 (1926), was an almost identical action seeking to recover a commission on a broker's contract for the sale of community real estate wherein the contract did not contain the signature of the wife. There, the court affirmed the action of the lower court dismissing the wife, but reversed the lower court's dismissal of the husband stating:

"[W]e are of the opinion that the court below erred in holding that complaint failed to state a cause of action as to Charles Young by reason of the fact that the property in question was community property. He might have been unable to comply with his part of the contract but that would not release him from liability to pay plaintiffs for their services if they had fully complied with the terms of the contract."

At least 18 jurisdictions have enacted statutes requiring a signed memorandum in contracts involving real estate brokerage commissions. See Powell, Real Property § 938.13(3)(b). Of those jurisdictions, the courts in states adhering to the law of community property have uniformly held

that brokerage agreements to procure purchasers for the sale of community and other jointly held property are valid despite the absence of the signatures of all joint owners. See *McAlinden v. Nelson,* 121 Cal.App.2d 136, 262 P.2d 627 (1953); *Kaufman v. Haney,* 80 Cal.App.2d 249, 182 P.2d 250 (1947); *Dixon v. Malloy,* 70 Cal. App.2d 322, 160 P.2d 896 (1945); *Russell v. Ramm,* 200 Cal. 348, 254 P. 532 (1927); *McDonald v. Bernard,* 87 Cal.App. 717, 262 P. 430 (1927); *Goodrich v. Turney,* 44 Cal.App. 516, 186 P. 806 (1919); *Johnson v. Krier,* 59 Cal.App. 330, 210 P. 966 (1922); *Tamimi v. Bettencourt,* 243 Cal. App.2d 377, 52 Cal.Rptr. 273 (1966); *Sanchez v. Yorba,* 8 Cal.App. 490, 97 P. 205 (1908); *Geoghegan v. Dever,* 30 Wash.2d 877, 194 P.2d 397 (1948); *Lemcke Co. v. Nordby,* 117 Wash. 221, 200 P. 1103 (1921); *Ginn v. MacAluso,* 62 N.M. 375, 310 P.2d 1034 (1957); *Golden v. Halliday,* 339 S.W.2d 715 (Tex.Civ.App.1960). Accord, *Johnson v. Allen,* 108 Utah 148, 158 P.2d 134 (1945); *Haas v. Cohen,* 10 Ill. App.3d 896, 295 N.E.2d 28 (1973); *Winston v. Minkin,* 63 Wis.2d 46, 216 N.W.2d 38 (1974); *Chastain v. Carroll,* 307 So.2d 491 (Fla.App.1975); *Isphording v. Wolf,* 36 Ind.App. 250, 75 N.E. 598 (1905).

Respondent, however, points out that language of I.C. § 9–508 setting forth the statute of fraud requirements for real estate broker's contracts provides:

> "No contract for the payment of any sum of money or thing of value, as and for a commission or reward for the finding or procuring by one person of a purchaser of real estate for another shall be valid unless the same will be in writing, *signed by the owner of such real estate,* or his legal, appointed and duly qualified representative."

He argues cases from other jurisdictions such as California are distinguishable from the case at bar in that those states' statutory provisions refer to "the party to be charged" in connection with the signature requirement while Idaho has chosen to employ the term "owner" in our otherwise

similar statute. See Cal.Civil Code, § 1624(5) (Derring 1971); Rev.Code Wash. Ann. § 19.36.010(5) (1961); N.M.Stat. Ann. § 70–1–43 (1953); Tex.Ann.Civ.Stat., art. 6573a, § 28 (Vernon 1968). Respondent further argues that the word owner in I.C. § 9–508 must be construed "owners" in accordance with I.C. § 73–114.

I.C. § 73–114 is not mandatory by its terms, but merely instructive that the singular may be extended or applied to the plural. It is not a rule of general application and applies only when necessary to carry out the obvious intent of the legislature. *First Nat. Bank in St. Louis v. Missouri,* 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486 (1924); *State v. Camp,* 189 Ga. 209, 6 S.E.2d 299 (1939); *State v. Hamilton,* 298 P.2d 1073 (Okl.Cr.App.1956). We are not persuaded that the legislature intended the statutory construction sought by respondent here.

At the time these parties entered into the brokerage agreement, I.C. § 32–912 gave the husband of a marital community the sole right to manage, control and dispose of community property subject to an exception for the conveyance or encumberance of community real estate. It provided in pertinent part:

> "The husband has the management and control of the community property, except the earnings of the wife for her personal services and the rents and profits of her separate estate. But he cannot sell, convey or encumber the community real estate unless the wife join (sic) with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed or encumbered . . ."

The effect of this provision on brokerage agreements was considered in *Central Idaho Agency, Inc. v. Turner,* 92 Idaho 306, 442 P.2d 442 (1968), where this Court stated:

> "A contract employing a broker to find a purchaser of real property, is not a contract to sell, convey or encumber real

property or any interest therein. It is purely a contract of employment for services to be performed by the broker for a commission to be paid upon the occurrence of certain specified events."

By this declaration it is clear that brokerage contracts to procure a purchaser of community realty do not fall within the limitations of I.C. § 32–912.

With respect to the legislature's choice of the word "owner" in I.C. § 9–508, in contrast to the language utilized in similar statutes of other jurisdictions, we take particular notice of case law existing in 1915 when our statute was adopted. At that time there were two cases, *Houser v. Hobart,* 22 Idaho 735, 127 P. 997 (1912) and *Kerr v. Finch,* 25 Idaho 32, 135 P. 1165 (1913), which interpreted the statutory language "party to be charged." Both of these cases involved the statute of frauds provisions relating to the sale of goods which mandated a writing "subscribed by the party to be charged." I.C. § 9–505(4) (repealed Dec. 31, 1967). It was then argued that those words merely required the signature of the party against whom enforcement of the contract was sought. Rejecting this contention the Court in *Houser* stated:

"The words 'the party charged' mean the party chargeable with performing some act stipulated in the agreement. That may be only one of the parties to the agreement, or it may be both the parties to the agreement. * * * [A] unilateral agreement would only require the signature of *the* party which would be only one party, while a bilateral or mutual agreement will require reciprocal duties and obligations to be performed. And so it appears clear to us that the words 'the party charged' have special reference to the party, whether it be one or more, charged with the performance of some duty or obligation under the contract." 22 Idaho at 747, 127 P. at 1001.

This meant that by these terms the signature requirement differed depending upon whether the contract involved a unilateral or bilateral agreement. In a unilateral agreement the only signature necessary was the party charged with performance.

It is clear that a real estate broker's employment contract is usually a unilateral agreement which the broker may accept only by a full performance. See Mandel, The Right of a Real Estate Broker to a Commission in California, 8 U.C.L.A.L.Rev. 152 (1961). Accordingly, the rule set down in *Houser* and affirmed by *Kerr* would have required only the signature of the broker had the legislature chosen the words "party to be charged." We may assume that the legislature enacted I.C. § 9–508 with full knowledge of the then existing judicial decisions. *Oregon Short Line R.R. Co. v. Pfost,* 53 Idaho 559, 27 P. 2d 877 (1933). We therefore assume that the legislature selected the word "owner" in I.C. § 9–508 to emphasize the requirement that a brokerage contract would require the signature not only of the broker, but also of the party seeking to obtain a purchaser.

In the final analysis we must decide the question on the basis of what we deem to be a reasonable statutory interpretation, consistent with public policy and purpose. We have the clear precedent of *Thomas v. Young,* 42 Idaho 240, 245 P. 75 (1926), albeit the opinion in that case did not involve the statutory analysis addressed herein. Research reveals no presently prevailing authority holding that a brokerage employment contract such as is presented at the case at bar is void or voidable because of the absence of the signature of one of the owners of the subject realty. The primary purpose of I.C. § 9–508 is to prevent fraudulent or unfounded claims of brokers. This particular portion of our code relates entirely to statutes of frauds and has as its objective avoiding disputes as to whether or not an agreement in fact exists, the amount of a commission and the exclusive or non-exclusive terms of a listing agreement. See *Pacific Southwest Dev. Corp. v. Western Pac. R.R. Co.,* 47

Cal.2d 62, 301 P.2d 825 (1956); *Carey v. Cusack,* 245 Cal.App.2d 57, 54 Cal.Rptr. 244 (1966); *Brand v. Mantor,* 6 Cal.App.2d 126, 44 P.2d 390 (1935); *Mallamo v. Hartman,* 70 Ariz. 294, 219 P.2d 1039 (1950); *Henderson v. Lemke,* 60 Or. 363, 119 P. 482 (1911); *In re Hannan,* 127 F.2d 894 (7th Cir. 1942).

■ We deem the case at bar to be purely a matter of a service contract not necessarily related to the ownership of land. Idaho's community property law has evolved so as to permit and often sanction the independent contracts of spouses even when those contracts relate to community assets. See Brockelbank, Community Property Law of Idaho, 329–346 (1962); *Intermountain Realty Co. v. Allen,* 60 Idaho 228, 90 P.2d 704, 122 A.L.R 647 (1939); *Munro v. McAllister,* 34 Idaho 638, 203 P. 286 (1921); *Morgan v. Firestone Tire & Rubber Co.,* 68 Idaho 506, 201 P.2d 976 (1948); *Vanek v. Foster,* 74 Idaho 532, 263 P.2d 997 (1953); *Abbl v. Morrison,* 64 Idaho 489, 134 P.2d 94 (1943); *Idaho Lumber & Hardware Co. v. DiGiacomo,* 61 Idaho 383, 102 P.2d 637 (1940); *Reimann v. United States,* 315 F.2d 746 (9th Cir. 1963). We see no difference in the instant action. Therefore we hold that at the time this agreement was executed, a brokerage commission contract for the sale of community property signed and executed by a husband was valid under I.C. § 9–508, and the fact that the contract was not signed or ratified by his wife did not relieve him from potential liability. In recognition of the fact that I.C. § 32–912 has since been altered to extend management and control of community property to both husband and wife, it can also be reasonably concluded that under the terms of I.C. § 9–508 a brokerage contract involving community realty need only be signed and executed by one spousal owner and is binding upon that party notwithstanding the absence of the signature of the other spouse.

Appellant Forsman also assigns error to the district court's issuance of summary judgment on the basis that the property was not adequately described in the real estate brokerage contract. The property was described in the agreement as "1185 acres, 893 cultivated" known as the "Bill Hatch Farm" and located in Caribou County "six miles north of Bancroft, 1¼ (miles) east." In addition, it was indicated that 220 acres were planted with fall wheat, that there was a quonset hut on the property and stated "for better description see owner's title deed on record, now made a part hereof." The form contract contained blanks which were not filled in for the section, township or range numbers.

We hold that the sufficiency of this description is governed by this Court's opinion in *Central Idaho Agency, Inc. v. Turner, supra.* Prior to *Turner* the prevailing rule in Idaho was that a brokerage agreement was invalid under I.C. § 9–508 unless it described the subject realty "no less certain in its terms than would be required under any other phase of the statute of frauds, or description that would meet the essentials in an action for a specific performance." *Murphy v. Livesay,* 34 Idaho 793, 197 P. 536 (1921); *Laker Land & Loans v. Nye,* 40 Idaho 793, 237 P. 630 (1925). In *Turner,* that requirement was abandoned by the Court and a new rule established:

> "[T]he description in the agreement is sufficient where it is shown that there is no misunderstanding between the property owner and the broker as to the property to be offered for sale, and where it is sufficient to enable the broker to locate the property, show it, and point out its boundaries to the prospective purchaser."

■ Respondent argues that *Turner* is factually distinguishable from the case at bar and that *Murphy* and *Laker Land* were overruled only to the extent they were in conflict with the new requirement. In *Turner,* this Court recognized that although the land description there was complete, it was also highly inaccurate. Nevertheless, the Court realized that as between the broker and the vendor, the de-

scription was adequate and as supplemented by parol or extrinsic evidence it was legally sufficient. By contrast, in the case at bar there is no indication that the description is erroneous in any respect or that it failed to provide the broker with enough information to locate and show the property to prospective purchasers with accuracy and certainty. Moreover, the agreement here also incorporates the owners' deed of record to supplement the description and thus, like *Turner,* the exact acreage and location as to section numbers was readily available and could be established without adding to or subtracting from the agreement intended by the parties.

■ At the district court level, respondent also sought summary judgment asserting that because of the failure to consummate the earnest money agreement the appellant broker had not satisfied its obligation on the brokerage agreement. Since this case must be remanded for further proceedings, we note that the inability to complete the contract for sale is not necessarily dispositive of respondent's right to his commission. A real estate broker is entitled to full compensation for securing and producing a purchaser ready, willing and able to take his principal's listed property on the terms of the authorized employment contract or on the terms acceptable to the seller. *Rogers v. Hendrix,* 92 Idaho 141, 438 P.2d 653 (1968). See also 10 A.L.R.3d 665. Unless the employment agreement specifies to the contrary, the right to recovery is not impaired by the fact that the sale was not consummated even if, as here, the sale was frustrated by the refusal of the principal's spouse to join in the contract of sale. See 10 A.L.R.3d 669. It must be resolved by the fact finder if the buyer presented by the respondent broker was by the terms of the contract "ready and willing" to purchase and whether the terms offered by that prospective buyer were "acceptable" to the respondent. The earnest money agreement signed by the vendor and the buyer is competent evidence upon that question, notwithstanding that that agreement contained terms significantly different from those listed in the contract, and assuming those modifications were acceptable to the signing owner (husband).

■ If appellant here is successful below upon remand, such judgment may be satisfied from the separate assets of the husband or, since this was a contract to benefit the community, then from the community assets. *Holt v. Empey,* 32 Idaho 106, 178 P. 703 (1919); *Ginn v. MacAluso,* 62 N.M. 375, 310 P.2d 1034 (1957); *cf. Whiting v. Johnson,* 64 Wash.2d 135, 390 P.2d 985 (1964).

The judgment is reversed and remanded for further proceedings. Costs to appellant.

McFADDEN, DONALDSON and BAKES, JJ., concur.

McQUADE, Chief Justice (dissenting).

I believe that a real estate commission contract employing a broker to find a purchaser of community realty requires the execution and acknowledgment of *both* spousal owners. The applicable Idaho statute of frauds governing this area is unique in its terminology. Our provision requires that a contract for procuring a purchaser for real property be ". . . signed by the *owner* of such real estate." We must assume this choice of language was deliberate on the part of the Legislature which enacted this provision. Statutes from our sister states refer to "the party to be charged" with respect to the signature requirement. Therefore the cases cited by the majority are distinguishable and not controlling, because the courts in those instances were construing statutes significantly different from the comparable Idaho provision.

The real property in issue was acquired by respondents during the existence of their marriage, and was found to be community property. Community property in this state does not belong to one spouse as

against the other. Rather, both spouses have vested, equal and undivided ownership interests in the property.[1] This is in contrast to separate property, which belongs either to one spouse or the other.

If we accept as true the premise that both spouses share equally in the ownership of the community real property acquired during coverture, and if I.C. § 9–508 requires the *owner* of real estate to sign a real estate commission contract before it will be deemed valid, then it must follow that before a real estate commission contract to find a buyer of community real property such as the one in issue can be declared legal, both members of the community must join in its execution. This conclusion follows because the "owner" of community real property is neither the husband alone nor the wife; but rather *both* the husband and wife.

In addition, I.C. § 73–114 provides in pertinent part:

"*Statutory terms defined.* — Unless otherwise defined for purposes of a specific statute, . . . the singular number includes the plural . . ."

I.C. § 9–508 does not define "owner." Thus we must assume that the word "owner" includes the "owners," which in the case of community realty, means both the husband and wife.[2] Had the Legislature desired a contrary meaning, it could have used the term "*an* owner" instead of "*the* owner;" or perhaps language like "the owners, or any one of them."

Furthermore, I am not persuaded that the case of *Thomas v. Young, supra,* is controlling in this appeal. The Court's opinion in that case does not indicate reliance upon any statutory and case authority; whereas the instant action presents us di-

rectly with an unavoidable question of statutory construction. Nor do I believe the majority's handling of the significance of the *Houser* and *Kerr* cases is correct. The majority reasons that had the Legislature chosen to utilize the words "party to be charged" in enacting I.C. § 9–508, rather than the language it eventually opted to employ, then it would have been necessary for only the broker and not the seller to sign the real estate commission contract for it to be valid. I do not believe that had the Legislature used the phrase "party to be charged," a broker could have enforced a real estate commission contract against the party seeking to obtain a willing purchaser in the absence of the latter's signature. Such an interpretation would be contrary to the purpose of the statute of frauds in this area which is to prevent fraudulent or unfounded claims of brokers.

Finally, I am not in agreement with the majority's view that its interpretation is consistent with public policy. The majority opinion protects the realtor against the owner of real property, even though the former is in most instances more knowledgeable and expert than the latter. The majority opinion does nothing to safeguard against the possibility of a broker generating a fee by persuading one spouse, unschooled in business matters, to sign a brokerage contract, which the other spouse might never had agreed to. Since both spouses must agree before community realty can be conveyed, it would make sense to require both spouses to agree to the procurement of a broker to bring about the conveyance as well. Otherwise, we invite brokers to accumulate promises of commissions from the unknowing when there is no real expectation that a sale will ever result.

1. *See Anderson v. Idaho Mutual Benefit Association*, 77 Idaho 373, 377, 292 P.2d 760, 762 (1956) and cases cited therein.

2. *See McDowell v. Willis*, 85 Cal.App. 496, 259 P. 765 (1927); *State v. Hamilton*, 298 P.2d 1073 (Okla.Cr.App.1956), reading "owner or lessee" to include more than one in statute relating to formation of a grazing district; *Houser v. Hobart*, 22 Idaho 735, 127 P. 997 (1912), where this Court held the word "party" to include the plural.