275 F.2d 196
 George J. TOWLE and Fred George, individually and as copartners doing business as Towle-George Turkey Log Company, also known as Towle Food Products Co., a partnership, Appellants,
v.
NORBEST TURKEY GROWERS ASSOCIATION, a corporation, Appellee.
 No. 16317.
 United States Court of Appeals Ninth Circuit.
 February 9, 1960.
 
 Carl Hoppe, James F. Mitchell, San Francisco, Cal., Edgar B. Stewart, Howard H. Bell, Oakland, Cal., for appellants.
 Thelen, Marrin, Johnson & Bridges, Edward J. Ruff, Ira A. Brown, Jr., San Francisco, Cal., Harry D. Pugsley, Salt Lake City, Utah, for appellee.
 Before HAMLIN, MAGRUDER and KOELSCH, Circuit Judges.
 HAMLIN, Circuit Judge.
 
 
 1
 On or about May 25, 1954, appellant Towle-George Turkey Log Company, a partnership, agreed to buy 190,000 pounds of a food product known as turkey log from appellee Norbest Turkey Growers Association at 99 cents a pound. Appellant agreed to pay Norbest for the turkey logs as they were withdrawn from storage, and to pay for the entire amount by August 1, 1954. After 100,000 pounds had been withdrawn and paid for by the partnership, Norbest was to issue the partnership a credit of four cents a pound on said 100,000 pounds, the balance of 90,000 pounds to be paid for at 95 cents a pound. Thus, the effective price for the entire lot was 95 cents a pound.
 
 
 2
 On June 10, 1954, appellant entered into a contract to sell these same turkey logs to Turkey Log Corporation of Illinois (called Illinois) for $1.05 a pound. Illinois agreed to pay appellant for the turkey logs as they were delivered to Illinois' order, the total purchase price payable on or before August 1, 1954. The two agreements were entirely separate.
 
 
 3
 Until about August 10, 1954, the parties generally observed the following procedure: From time to time, Illinois ordered turkey logs from appellant, and appellant in turn placed an order with Norbest for shipment to points designated by Illinois. Norbest invoiced appellant at 99 cents a pound and appellant invoiced Illinois at $1.05 a pound. In a few instances Illinois specifically requested sight draft shipment to a third party customer of Illinois, in which case Norbest shipped as requested. Except in these few instances where sight draft shipment was requested, appellant dealt with Illinois on an open account basis.
 
 
 4
 By the latter part of July, 1954, it apparently became clear that not all the turkey logs would be paid for by August 1, the final date for payment under both contracts. Apparently the source of the difficulty was that Illinois was not meeting its obligations to appellant. Although appellant was apparently depending on payment from Illinois in order to satisfy its obligation to Norbest, appellant's obligation to Norbest stood by itself and was not contingent on performance by Illinois.
 
 
 5
 On July 22, 1954, Towle, one of the partners in appellant partnership, wrote Norbest that he was
 
 
 6
 "* * * planning on leaving for Europe the first part of August by which time I had hoped that the agreement between your company and [Illinois] and myself would have been completed. In as much as I will not be here at the termination of the contract it would help considerably if you would allow me to have [Illinois] pay you direct rather than their paying me and me paying you. To simplify this, it would probably be easier if you were to invoice [Illinois] direct on the basis of $1.05 a pound * * * and crediting my account on the basis of $.99 per pound with the $.95 per pound retroactive figure to be credited at the proper time. You, in turn, could pay this office * * * whatever credits accumulate * * *."
 
 On July 30, Norbest wrote Towle that
 
 7
 "* * * while 190,000 # should be cleaned up and paid for by the end of this month, I am willing to extend the date to August 10th for the billing to be completed.
 
 
 8
 "We observe your request to bill at $1.18 for less than carload and at $1.15 for carloads. We will be glad to follow your instructions, and at such time as a credit accrues to you, we will forward the money to your organization in Walnut Creek, California."
 
 
 9
 On August 3, Towle answered Norbest's letter of July 30:
 
 
 10
 "I * * * notified Mr. Hart [of Illinois] that the invoicing would come from your office on the basis of $1.05 a pound with payment to be made to Norbest Turkey Growers Association crediting [the partnership] * * *.
 
 
 11
 "I have also advised Hart that from now on he will be billed direct by Norbest and not from this office.
 
 
 12
 "I am sorry that I have to seem to be running off in the middle of business but I had fully expected that these negotiations would be completed by this time. Our plans have gone too far, the ticket purchases, reservations, etc., to change them now and hope that the burden that I have put on you people relative to invoicing and collecting will not be too inconvenient. * * * As for future deliveries, I think that the sight draft payable to Norbest is the only solution to insure prompt payment."
 
 On August 6, Norbest again wrote Towle:
 
 13
 "I have your letter of August 3rd in which you request that we bill [Illinois] at $1.05 a pound and credit [the partnership] with the difference. We will be glad to do this.
 
 
 14
 "* * * We regret that the 190,000 pounds of turkey log has not been delivered and paid for as per our agreement.
 
 
 15
 "It appears we extended the time until August 10th for the billing to be complete and I am hopeful it can be worked out on this basis. In the event that we are unable to get the 190,000 pounds of logs billed and paid for within the allotted time, we see no alternative for us but to request the cancellation of the agreement which we made and which you are a party to."
 
 
 16
 On August 10, representatives of Norbest, Illinois and the appellant partnership met in Salt Lake City to discuss handling of the balance of the turkey logs. Towle left before the meeting, but the partnership was represented by Towle's partner, George. The trial court found that it was orally agreed at the meeting that Norbest, acting on behalf of the partnership, would transfer the remaining turkey logs directly to Illinois on the basis of orders issued by Illinois; that Norbest would invoice Illinois directly at $1.05 a pound; and that after Norbest had been paid in full at its price of 95 cents a pound, any credits resulting from the difference in price between 95 cents and $1.05 would be paid by Norbest to the partnership. This arrangement was apparently first suggested in Towle's letter to Norbest on July 22 and accepted by Norbest on either July 30 or August 6.[1]
 
 
 17
 Thereafter, on August 16, 20, 23 and 25, Norbest shipped the remainder of the turkey logs to Illinois on open account and invoiced Illinois at $1.05 a pound. Illinois refused to pay the full amount for which invoiced and paid Norbest only enough to satisfy appellant's obligation to Norbest at the rate of 95 cents a pound. The appellant has never received any part of the 10 cents a pound profit it would have realized had Illinois performed according to the terms of its agreement with appellant. For reasons not appearing, the appellant is unable to collect from Illinois, and Norbest has refused to pay anything, as it received only enough from Illinois to satisfy its own claim against appellant.
 
 
 18
 Appellant brought this action against Norbest to recover the anticipated 10 cents a pound profit it has been unable to realize. The trial court, sitting without a jury, awarded judgment to Norbest. Jurisdiction in the District Court was based on diversity of citizenship. The partners are both citizens of California and the partnership has its principal place of business in California. Norbest is a Utah corporation. Jurisdiction in this court is based on 28 U.S.C.A. § 1291.
 
 
 19
 The parties agree that Norbest was the gratuitous agent of the partnership with authority to ship turkey logs to Illinois and collect therefor, but differ with respect to the terms of payment which Norbest, as agent of appellant, was authorized or required to extend to Illinois. The appellant asserts Norbest was authorized to ship to Illinois only on a sight draft bill of lading basis, that Norbest exceeded its authority in extending credit to Illinois, and consequently is liable to appellant for any losses resulting.
 
 
 20
 Although Norbest received no consideration for its undertaking, it was nevertheless bound to complete performance in accordance with its agreement to act as the appellant's agent once that performance had begun. Brand v. Mantor, 1935, 6 Cal.App.2d 126, 44 P.2d 390; 1 Mechem on Agency 921 (2d ed. 1914 § 1258). If Norbest acted in good faith and within the scope of its authority the judgment must be affirmed.
 
 
 21
 The trial court found that the appellant never instructed Norbest to ship to Illinois only on a sight draft bill of lading basis or any other basis that would not involve the extension of credit, and that Norbest never agreed to ship to Illinois on such a basis. To the contrary, the court found Norbest's shipments to Illinois after August 10 were made in approximately the same manner and followed approximately the same form as the appellant had followed in making previous shipments or transfers to Illinois, and that Norbest acted within the scope of its agency.
 
 
 22
 The appellant places particular reliance for its argument that Norbest was authorized to ship only on a sight draft basis on Towle's statement in his letter to Norbest on August 3 that "As for future deliveries, I think that the sight draft payable to Norbest is the only solution to insure prompt payment."
 
 
 23
 In his original proposal of July 22, Towle said "it would probably be easier if you were to invoice Illinois direct," and in his letter of August 3 he said he had notified a representative of Illinois that "the invoicing" would come from Norbest, and further said he had advised the Illinois representative that "he will be billed direct by Norbest." He hoped the burden he had put on Norbest "relative to invoicing and collecting" would not be too inconvenient, and concluded with his statement, "As for future deliveries, I think that the sight draft payable to Norbest is the only solution to insure prompt payment." This is the only place in the series of correspondence where the words "sight draft" are used. If Towle, speaking for the partnership, wanted Norbest to ship only on sight draft he should have chosen words more suitable to his purpose than "I think", which were particularly inappropriate to convey the express direction the partnership now ascribes to this statement.
 
 
 24
 In its letters of July 30 and August 6, Norbest referred to Towle's "request" or "instructions" that Norbest "bill" Illinois.
 
 
 25
 Appellant in its own dealings with Illinois had invoiced Illinois on an open account basis except in those instances where Illinois specifically requested shipment be made sight draft bill of lading. Except for these instances, the whole course of dealing between Norbest and appellant, and between appellant and Illinois, had been on credit.
 
 
 26
 This correspondence, considered against the background of prior credit transactions between Norbest and appellant, and between the appellant and Illinois, falls far short of a clear and unambiguous direction to ship only on sight draft.
 
 
 27
 "It is the duty of the principal, if he desires an authority to be executed in a particular manner, to make his terms so clear and unambiguous that they cannot reasonably be misconstrued. If he does this, it is the agent's duty to the principal to execute the authority strictly and faithfully; * * *."
 
 
 28
 "But if, on the other hand, the authority be couched in such uncertain terms as to be reasonably susceptible of two different meanings, and the agent in good faith and without negligence adopts one of them, the principal cannot be heard to assert, either as against the agent or against third persons who have, in like good faith and without negligence, relied upon the same construction, that he intended the authority to be executed in accordance with the other interpretation. If in such a case, the agent exercises his best judgment and an honest discretion, he fulfills his duty, and though a loss ensues, it cannot be cast upon the agent.
 
 
 29
 "An instrument conferring authority is generally, it is said, to be construed by those having occasion to act in reference to it `as a plain man, acquainted with the object in view, and attending reasonably to the language used, has in fact construed it. He is not bound to take the opinion of a lawyer concerning the meaning of a word not technical and apparently employed in a popular sense.'" 1 Mechem on Agency 562 (2d ed. 1914 §§ 792, 793).
 
 
 30
 If the appellant wanted Norbest to ship to Illinois only on a sight draft basis, the opportunity to make its position clear was at the meeting on August 10. However, George, who represented appellant at the meeting, admitted he said nothing about shipment on sight draft. He did testify that Norbest's representative told the representative of Illinois that future deliveries to Illinois would be sight draft bill of lading, but Norbest's representative testified, and the trial court found, that no such statement was made. This direct conflict presented a simple question of credibility and the trial court's finding cannot be disturbed.
 
 
 31
 Certain testimony the appellant sought to introduce was excluded by the trial court but admitted for purposes of the record under Rule 43(c), Fed.Rules Civ.Proc. 28 U.S.C.A. The excluded testimony was to the effect that (1) on August 9, the day prior to the meeting, Towle instructed his partner George to make sure there was an understanding that the balance of the turkey logs would be handled on a sight draft basis, and (2) the morning of August 10, prior to the meeting, Towle told Illinois' representative that future shipments would have to be paid for on sight draft.
 
 
 32
 Norbest was not represented at either of these discussions and there is no contention it ever learned of them. As the statements were never communicated to Norbest, they were immaterial and properly excluded.
 
 
 33
 One transaction requires special mention. On July 29, 1954, Norbest was directed by appellant (upon instructions from Illinois) to transfer a specific shipment to a customer of Illinois on sight draft. Norbest shipped by sight draft on August 3, but the consignee refused to accept delivery. On August 16, Norbest directed a cold storage company in Wichita, Kansas, to store the shipment in the name of Illinois, and to bill Illinois for the storage charges. The appellant contends that in transferring the shipment to Illinois on open account, Norbest deviated from the appellant's specific instructions, and that when shipment was refused Norbest should have looked to the appellant for new instructions before releasing the goods to Illinois. We do not agree. The appellant had never, prior to August 10, called for sight draft shipment except in this and other instances where Illinois requested sight draft shipment to its customers. When the shipment was refused by the consignee, Norbest had the same authority to transfer them as it did to transfer any other turkey logs. By August 16, when the turkey logs were released to Illinois, Norbest had authority to extend credit.
 
 
 34
 During the August 10 meeting, the representative of Norbest, while George was present, dictated a letter to the representative of Illinois in which he said:
 
 
 35
 "* * * approximately 88,000 pounds stored on the Pacific Coast will be relabeled and paid for by [Illinois] by August 20th * * *."
 
 
 36
 The appellant now asserts that this statement constituted an undertaking by Norbest not to extend credit to Illinois after August 20, and that the original right to extend credit did not survive a default of payment by the agreed due date. The shipments in question were made on August 20, 23, and 25, and Illinois did not pay until some time later.
 
 
 37
 We do not think the letter referred to can reasonably be construed as conditioning Norbest's right to extend credit beyond that date. It was an effort by Norbest to get payment on a contract which had been in default since August 1st.
 
 
 38
 On August 11, the day after the meeting, Norbest wrote appellant (George):
 
 
 39
 "I appreciated the opportunity of visiting with you on the turkey log operation and your inquiry about our relationship * * *.
 
 
 40
 "I wish to state that as soon as the turkey logs are all sold and paid for, which we hope to have completed prior to August 31st, our organization will remit to the partnership the amounts due them, which we are collecting here.
 
 
 41
 "I am hopeful these funds will be in so we can close our records here prior to September 1st."
 
 
 42
 That Norbest did not regard its letter at the meeting of August 10th as a definite undertaking not to extend credit beyond August 20 is apparent not only from the fact that it did so, but from the August 11 letter to appellant in which it expressed its "hope" that payment would "be completed prior to August 31." The last shipment to Illinois was made August 25th.
 
 
 43
 If George regarded the statement respecting payment by August 20 as limiting Norbest's authority to extend credit beyond that date, when he received the letter of August 11 he was bound to realize Norbest did not share this view and had a duty to make his position clear. When an agent reasonably and in good faith misapprehends the authority with which he has been endowed, the principal, when apprised of the misunderstanding, has a duty to make his desires clear. He may not sit idly by and later make known his secret thoughts in an effort to cast an ensuing loss on an agent who has acted in the light of what he has been allowed to reasonably believe he may do. 1 Mechem on Agency 333 (2 ed. 1914 § 453).
 
 
 44
 We think the findings of the trial court are amply supported by the evidence, and that Norbest acted within the scope of its express or implied authority in extending credit to Illinois.
 
 
 45
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The trial court found that on or about August 6 Norbest for the first time advised the appellant that it would be willing, on behalf of the appellant, to make shipments of the balance of the turkey logs to Illinois direct, to bill Illinois at $1.05 a pound, and to credit appellant's account with Norbest with the difference
 Appellant contests this finding and contends that Towle's proposal of July 22 was consented to and accepted by Norbest on July 30, 1954, a week prior to the August 6 date found by the trial court. This contention is based upon the following statement in the letter from Norbest to Towle on July 30:
 "We observe your request to bill at $1.18 for less than carload and at $1.15 for carloads. We will be glad to follow your instructions, and at such time as a credit accrues to you, we will forward the money to your organization * * *."
 The $1.15 and $1.18 figures refer to the price Illinois charged its customers, but it is not altogether clear from the record that this statement was in response to Towle's proposal of July 22. The trial court's finding that Norbest first accepted the proposal on August 6 is supported by statements in Towle's letter to Norbest on August 3 and Norbest's letter to Towle on August 6. We are unable to say the trial court's determination was clearly erroneous, but will assume that Towle's proposal of July 22 was accepted by Norbest on July 30, as contended by appellant, rather than on August 6.